## ST. PAUL & SIOUX CITY RAILROAD COMPANY *vs*. MINNEAPOLIS & ST. LOUIS RAILWAY COMPANY.

### October 21, 1879.

Liability of Railway Co. for Injury to Cars belonging to Connecting Railway Co.—Under an agreement between plaintiff and defendant companies, between whose lines of road there was a rail connection at Merriam Junction, the defendant received from plaintiff, at said junction, eight of its cars, loaded with wheat, for transportation and delivery to consignees at Minneapolis, a point on defendant's road. By the terms of said agreement, defendant was required to haul the cars over its road, having exclusive charge and control thereof, make delivery of the wheat, and then return the same, either loaded or empty, to the plaintiff, at said junction, in as good condition as when received, ordinary wear and tear by use excepted. Both parties were to share in the profits of the transportation of the wheat and other freight so carried, and plaintiff was to receive from defendant, in addition to its share of such profits, a stipulated compensation for such use of its said cars. While being so used by defendant, the cars were wholly destroyed by fire at Minneapolis, without any fault or negligence on its part amounting to want of ordinary care. *Held*, that defendant was not liable to plaintiff for such loss, either as a common carrier, bailee for hire, or otherwise.

Appeal by plaintiff from a judgment of the district court for Hennepin county, *Young*, J., presiding.

*E. C. Palmer*, for appellant.

*I. Atwater*, for respondent.

CORNELL, J.   As appears by the complaint, this action is to recover the value of eight freight cars belonging to plaintiff, which were consumed, while in the possession of the defendant, in the great fire that occurred in the milling district of Minneapolis, on the evening of the 2d day of May, 1878.   The circumstances connected with the loss, as stated in the complaint, are briefly these:   Soon after noon of that day, defendant, under a prior special agreement between the companies, first took possession of these cars from the plaintiff at Merriam Junction, where its line of railroad had a rail connection with that of the plaintiff.   When received, they were already loaded with wheat, consigned to parties in Min-

neapolis, to which place they were hauled by the defendant, over its line of road, during the afternoon of the same day, and in the same train.

When the fire first broke out in one of the mills, known as the Washburn mill, which was about seven o'clock in the evening, all the cars were near by, three of them having been unloaded and left standing to await the return train to Merriam Junction—one on the track of defendant's road, and two on a side track of the consignee, connected therewith, to facilitate the delivery of freight. The other five were still unloaded, and were then standing where they had been left by defendant for the purpose of being unloaded, awaiting the convenience of the consignee of the wheat to receive the same, one being upon the track of defendant's road, and the other four upon an extension of such track belonging to the consignee, and also built to facilitate the delivery of freight. It is alleged that the fire was not caused by any act or omission of the defendant, and there is no averment of any negligence on its part in leaving the cars where it did, or in connection with the loss. It is further alleged that the defendant came into possession of the cars in question by delivery from the plaintiff at said Merriam Junction, under and in pursuance of an agreement then existing between them, which is set out in the complaint in these words:

"It has been and still is the custom, understanding and agreement between said companies, (plaintiff and defendant,) as to business common to both roads, that cars belonging to or furnished by one of said companies, when loaded with freight at points on the road of that company, or of a connecting company, consigned to a point on the road of the other company, shall be taken charge of at said Merriam Junction, and controlled exclusively by said other company, on and over whose road said freight was consigned, and transported to the point of destination and delivered; that said cars shall be returned, loaded or empty, at the option of said latter company to said Merriam Junction, and there restored

and redelivered to the former company owning or furnishing the same, in the same condition as when received, ordinary wear and tear excepted; that in all such cases the compensation charged for transporting such freight, as per bill of lading, was agreed to be and was divided between said companies upon a percentage to each of said gross sum. And it is further understood and agreed that each company over whose road the other company's cars shall run shall pay to the company owning or furnishing the same, as compensation for the use thereof in transporting said freight, one cent for each car per mile for every mile said cars shall run, loaded or empty, from and to said Merriam Junction, over the road of the company so using the same."

The question presented concerns the liability of the defendant, upon the facts as thus stated in the complaint. It is contended that it is liable as a common carrier, but if not, as a bailee for hire. As respects its undertaking as to the cars under the agreement, the defendant cannot be regarded as a common carrier, within the definition of that term to be found in any text-book or authority. It neither contracted nor undertook to perform any service as a carrier in transporting them from one place to another, nor was it entitled to receive any compensation whatever for what it agreed to do in the way of taking and using them upon its road, and redelivering them to the plaintiff at Merriam Junction. . It did not receive the cars for transportation for hire, but for use on its line of road in doing a business of transportation which was common to both roads, and in the profits of which both companies were to share. The compensation agreed upon was to be paid by the defendant to the plaintiff for such use, and not by the latter to the former as a reward for transportation. These facts alone show that the defendant's liability, if any, was not that of a common carrier.

Upon the assumption—which is undoubtedly correct—that the contract between the parties for the use of the cars was one of bailment for hire, for their mutual benefit, no recovery

can be had, for the reason that it not only appears affirmatively that the fire was the proximate cause of the loss, and that it occurred through no fault of defendant, but no negligence whatever is attributed to it in connection with the loss by any direct averment, or by any allegation of fact from which, as matter of law, it can be inferred. As the bailment was reciprocally beneficial to both parties, no liability could attach to the defendant by reason of the destruction of the property intrusted to it as bailee, unless it occurred through some negligence on its part amounting to want of ordinary care. This essential fact must be averred or shown in the complaint, for it is the very ground of the action. Its existence cannot be presumed. Story on Bailments, (8th Ed.) §§ 23, 410, and 410a.

Judgment affirmed.