The Peoria and Pekin Union Railway Company

*v.*

The Chicago, Rock Island and Pacific Railway Company.

*Filed at Ottawa January 23, 1884.*

1. COMMON CARRIER—*a railway company as a common carrier of the cars of another company, hauled over its line.* A railway company engaged in the transportation of freights for hire as a common carrier, is bound to transport or haul upon its road the cars of any other railroad company, when requested so to do, and will hold the same relation as a common carrier to such cars that it does to ordinary freight received by it for transportation, and in case of loss will be held to the same measure and character of liability to the owner of the cars so received for transportation, as would attach in respect to any other property.

2. In this case the defendant railroad company's principal business was switching cars for other railroad companies. Its tracks were connected with those of the other railroads by a transfer switch, and with mills, elevators and manufactories in and around the city where its business was transacted. The plaintiff corporation brought a car, loaded with freight, to the city, and placed the same on the transfer track, with orders to the defendant to ship the same to a certain distillery, to which place it was taken and unloaded. When unloaded it was taken by the defendant, without orders from the plaintiff, to a sugar refinery, to be loaded, and then switched to the transfer track for shipment. On the same day the sugar refinery was burned, and also the car: *Held,* that the defendant was liable, as a common carrier, to the plaintiff for the value of the car so destroyed.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Peoria county; the Hon. JOHN BURNS, Judge, presiding.

This action was brought by the Chicago, Rock Island and Pacific Railway Company, against the Peoria and Pekin Union Railway Company, to recover the value of a freight car destroyed by fire. In the first count of the declaration defendant is charged with having borrowed the car, and with a failure to return, on request; and by the second and third counts defendant is charged as a common carrier,—the de-

livery of the car, the obligation to return, and the failure to do so, being alleged with the usual formality. Only the general issue was filed to the declaration, but by stipulation it was agreed either party might introduce any evidence under the general issue that could be introduced under any special plea or replication thereto well pleaded. On the trial in the circuit court plaintiff recovered a judgment for $410.14, which was afterwards affirmed in the Appellate Court for the Second District. A majority of the judges of the latter court having certified that in their opinion the case involves questions of law of "such importance on account of principal interest, as well as collateral interests, that it should be passed upon by the Supreme Court," defendant brings the case to this court on appeal, as it was permitted to do under the order of the Appellate Court. It is also certified by the judges of the Appellate Court that certain propositions, numbered from one to seven inclusive, embodied the "main and particular questions of law involved." So far as these propositions are or may be necessary to an understanding of the case, they will be found stated in the opinion of the court.

Messrs. STEVENS, LEE & HORTON, for the appellant:

The car was stored on the track of the Chicago, Rock Island and Pacific Railroad Company, as ordered, and while on the track the obligation of the Peoria and Pekin Union Company, if any existed, in the preservation of the car, bore the same relation only as the law imposes on a warehouseman. *Porter* v. *Chicago and Rock Island R. R. Co.* 20 Ill. 407; *Richards* v. *M. S. and N. I. R. R. Co.* id. 404; *Chicago and Alton R. R. Co.* v. *Scott,* 42 id. 132; *Merchants' Dispatch Co.* v. *Hallock,* 64 id. 284; *Rothschild* v. *Michigan Central R. R. Co.* 69 id. 164.

The defendant did not stand in the relation of a common carrier as to the plaintiff. The plaintiff did not pay for the switching, but this was done by the consignees.

Mr. J. C. HUTCHINS, Mr. THOMAS F. WITHROW, and Mr. H. W. WELLS, for the appellee:

A railroad company may become a common carrier of cars. Rolling stock is made personalty, and is the subject of carriage.    *Mallory* v. *Tioga R. R. Co.* 39 Barb. 488; *Railroad Co.* v. *Flanigan,* 77 Ill. 365; *Railroad Co.* v. *Smithson,* 1 Am. and Eng. Ry. Cases, 101.

Such companies are liable, as carriers, for the loss of empty sacks while being returned.    *Pierce* v. *Milwaukee R. R. Co.* 23 Wis. 387; *Aldridge* v. *Railroad Co.* 15 Com. B. (N. S.) 582; "*The Hardy,*" 1 Dill. 460; *Adams Express Co.* v. *Lesure,* 39 Ill. 312.

A carrier can not become a warehouseman while the property is in transit.    *McDonald* v. *Western R. R. Co.* 34 N. Y. 497; *Ouinitt* v. *Henshaw,* 35 Vt. 605.

A railway company can not make warehouses out of its cars upon its tracks.    *Jenks case,* 103 Ill. 588; *Porter* v. *Railroad Co.* 20 id. 407.


Mr. JUSTICE SCOTT delivered the opinion of the Court:

The defendant in this case is a railroad corporation existing under the laws of this State.    By the constitution of the State (sec. 12, art. 11,) all railways are "declared public highways, and shall be free to all persons for the transportation of their persons and property thereon, under such regulations as may be prescribed by law."    It is conceded defendant is a common carrier of freights for hire, and as such is bound to carry safely all freights tendered, with the usual and customary fares, or answer in damages for its miscarriage or refusal. Section 10, article 11, of the constitution, provides, "the rolling stock and all other movable property belonging to any railroad company or corporation in this State shall be considered personal property."    It must also be conceded a common carrier of freights would be compelled to receive

and carry this class of property for the usual fares, as well as other personal property.   When the facts of this case shall be stated, it will be seen these constitutional provisions have an important bearing on the decision to be rendered.

It appears from the evidence, defendant's principal business is switching cars for other railroad companies having their terminal points at Peoria, together with some work of that class on its own account.   Its tracks are situated in the lower part of the city, and thence connecting by lines of track with mills, elevators and manufactories in and about the city. Other companies desiring to have cars switched by defendant would place such cars on its transfer switch, and defendant would transfer them to the consignees whose places of business were on its tracks, as they should be ordered to do by the company placing them there.   When such cars were unloaded by the consignees, it was the duty of defendant to return them to the company from which it received them. Most generally such cars were returned. empty.   There is evidence, however, that tends to show it was the common understanding among the companies doing business at this point, if other shippers desired cars, defendant, without any specific order to that effect, was at liberty to place them at their places of business to be loaded, and when loaded they would be returned to the company owning such cars, to be shipped.   At all events it appears cars were so handled, and the companies concerned seem to have acquiesced in that mode of doing business.   On the 25th day of October, 1881, a car belonging to plaintiff was brought to the city of Peoria loaded by the Peoria and Rock Island railroad,—a railroad operated by plaintiff,—and was placed on the transfer track, and the agent who acted for the Rock Island roads ordered it to be switched to the Monarch mills, or distillery.   On the 27th day of that month it was taken by defendant to the distillery, where it was unloaded by the consignees, and on the same day it was taken by defendant from the distillery to

the Peoria sugar refinery, on an order from the refinery, to be loaded and then switched to the transfer track for shipment by the Chicago, Rock Island and Pacific Railway Company. In the afternoon of the same day the refinery was burned, and also this car, which was standing in close proximity. There was no order from plaintiff to take this car to the sugar refinery for any purpose, and it is not shown it had any knowledge defendant intended to do so.

The propositions of law certified by the Appellate Court, when resolved, involve the single inquiry whether defendant in the transaction out of which this action arose bore to plaintiff the relation of a common carrier, or was it that of a bailee, or that of a warehouseman. When the true relation of the parties shall be ascertained, the law fixes the extent of defendant's liability, if any exists. Unless it shall be found defendant was a common carrier as to this car, no liability would rest upon it for the loss, as no negligence is imputed to defendant.

The question presented is one of first impression in this court. Nor have counsel cited any case where the exact question involved has been considered by any court of last resort. It leaves this court free to determine the law on principle, as shall be thought to best subserve public interests as well as the private interests of corporations concerned. No proof is needed to show the extent and the importance of the interests involved in the decision. It is a matter of so much public concern, that judicial notice may be taken of the fact that cars belonging to different companies are interchangeably used on all the principal railroads in the United States, and that no company could do any considerable freighting business that did not conform to this general usage. Without such usage it would be difficult, if, indeed, it would be possible, to transact the commercial business of the country. Freights for shipment across the continent could not well be stopped at the terminus of each carrier's line, and

re-shipped in cars of the connecting carrier. That would occasion more delay than the necessities of commerce would tolerate. The extent of the usage in regard to the exchange and transportation of cars among so many different railroads would seem to require such exacting rules and regulations as would insure the strictest accountability on the part of companies that may transfer or haul cars over their respective roads.

The statute of this State that forbids "extortion and unjust discrimination" by railroad companies, would seem by its provisions to recognize that railroad corporations may be common carriers of "cars," as well as of freights, for such a corporation is not only forbidden to make any unjust discrimination in its charges for the transportation of passengers or freights, of any description, but for the use and "transportation of any railroad car" upon its road. And why may there not be such a thing as a common carrier of cars, either with or without its load of freight? As to the freight the car contains, it will be conceded such carrying roads are common carriers, and are subject to the strict liability of such carriers, and, as has been seen, by a constitutional provision all the rolling stock and other movable property belonging to a railroad corporation in this State shall be considered personal property. What reason exists for discriminating against this class of "personal property," and for holding that railway companies carrying it shall not be regarded as common carriers? The mode of moving it, whether on wheels or in carriages, ought not to be the foundation for any distinction. In either case the property is in the exclusive care and control of the carrier, and there is as much reason arising from public considerations why such a carrier should be held to the strict liability of an insurer for the safety of the property, in the one case as in the other. The facts in the present case show a strong necessity for imposing the liability attaching to a common carrier. The car in ques-

tion was delivered to defendant, to be carried over its road to the warehouse of the consignees of the freight it contained. A charge for the service to be rendered was made, and was paid by the consignees.   The undertaking was also to return the car to the company from which it had been received, and the charges collected, or to be paid, included the latter service.   Thus it is seen defendant had the exclusive control of the car while on its track while in course of transportation to the consignees, and that control would seem to be as absolute as over any package of freight it might have to carry or otherwise deliver.   Plaintiff had parted with the care and custody of the car, and could not, at any point on defendant's road, interfere for its safety.   Its care was intrusted to defendant as fully as was the freight it contained.   The undertaking of defendant in regard to moving the car was within the scope of the general business it had engaged to do for the public, and it would seem no reason exists why the liability for the safe delivery of the car should not be the same as to the freight it contains, which, it is conceded, is that of a common carrier.   On what principle may defendant be considered a common carrier as to freights on its road and not as to the car containing it, which it is moving over its road with its own propelling power?

The law, as has been seen, makes all railways in this State "public highways," open to the use of all persons for the transportation of their persons or property, under such regulations as may be prescribed by law, and it is apprehended it is unlawful to make any discrimination as to the property offered to be carried, or as to whether it belongs to a private person or to a corporation.   If it is such property as is capable of being carried with the means ordinarily employed by such carriers, the obligation is imperative, and the carrier must receive the property and carry it with safety, in the way such property is usually carried, and any failure to do so will subject the carrier to damages.

The only case to which the attention of the court has been directed having any features like the one being considered, is *Mallory* v. *Tioga R. R. Co.* 39 Barb. 488. In that case the defendant company, which, it is conceded, was a common carrier as to freights and passengers, engaged to furnish plaintiff the motive power to draw his cars, loaded with his property, over its road, the plaintiff being obligated to load and unload his cars, and furnish brakemen to accompany them, but who were subject to the control of defendant's conductor, and it was held defendant assumed the liability of a common carrier, and consequently was liable for injuries to plaintiff's cars and property not caused by inevitable accident or the public enemies.

But aside from authority, the conclusion reached on principle is, defendant occupied the relation of a common carrier as to the car of plaintiff in its possession, as well as the freight it contained, and as such was liable for its safe return to plaintiff, unless its loss occurred from causes which exempt common carriers, which is not claimed in this case.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*