The Peoria and Pekin Union Railway Company

*v.*

The United States Rolling Stock Company.

*Filed at Ottawa March 30, 1891.*

1.  CARRIERS—*liability as insurers—of its continuation and suspension—transporting cars and freight from connecting lines.* Where the relation of common carrier is once shown the continuance of that relation will be presumed, and the burden of proof will be upon the carrier to show that at the time of loss, without negligence on the part of the carrier, its liability as insurer had terminated; but when this is done by showing delivery to the consignee, if in the further disposition of the property transported under the contract of the parties or in the usual course of business the liability as insurer again attaches, the burden is upon the party relying on such liability to show it.

2.  Where railroad cars loaded with goods are carried to the place of destination of the goods, and are there, by the direction of the shipper, placed upon the side-track of the consignee for the purpose of being unloaded, and the cars, after being unloaded, are to be taken by the carrier to the storage yard, and they are burned on such side-track before they are removed, and it is not shown whether they were unloaded before their destruction or that the carrier had again taken them in charge for removal and storage, the carrier will not be liable, as such, for their loss.

3.  While a railway company is transporting cars of another company, and has the complete and uninterrupted control of them, the

former will be liable as a carrier for any injury to the cars not caused by the act of God or the public enemy.

4. SAME—*former decisions—on the same subject.* The ruling of this court in *Peoria and Pekin Union Ry. Co.* v. *Chicago, Rock Island and Pacific Ry. Co.* 109 Ill. 135, that a railroad company receiving cars from a connecting line of road for transportation over its line, becomes, in the absence of a special contract, a common carrier of such cars as well as of the freight therein, is adhered to.

5. Where railroad cars containing freight are shipped over a connecting line of railroad to a certain point, to be delivered to the consignee of the goods to be unloaded, after which the carrier is again to take the cars to its yards for storage and keep them there until called for, the liability of the carrier as insurer of the cars will be suspended during the time of such stoppage, during which it has no control over the cars, and will not again attach until after the cars have been unloaded and made ready for removal to the place of storage. This case is distinguished from *Peoria and Pekin Union Ry. Co.* v. *Chicago, Rock Island and Pacific Ry. Co.* 109 Ill. 135.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Peoria county; the Hon. T. M. SHAW, Judge, presiding.

This is an action by appellee, against appellant, seeking to charge it, as a common carrier, with the loss by fire of four freight cars. The facts are, briefly, that appellant is a railroad company, owning a line of road from Pekin to Peoria, with large terminal facilities at the latter city, with various tracks leading from its own and other railroads, to industries in and about the city. By contract with various roads, including the Chicago, Pekin and Southwestern Railway Company, such roads have acquired the right to the use of the main and side-tracks, etc., of appellant, from Pekin to Peoria, using their own motive power. By contract between the appellant and such roads, upon the arrival of trains at Peoria the cars were left standing upon the tracks, as was most convenient, and upon the order of such railroad were taken upon the tracks of appellant, by its motive power and employes, to their proper destination within the city, appellant to furnish storage room

within its yards for empty cars.  The lines connecting with appellant's road were entitled to the use of terminal facilities, for which stipulated compensation was to be paid; and for switching service appellant was to be paid all such reasonable charges as it should make, being a uniform rate per car, fixed prior to the service, and charged to all persons and companies doing business over appellant's line, without discrimination.

Appellee was the owner of the cars burned, and which, at the time of their destruction, were leased to the Chicago, Pekin and Southwestern Railway Company.  The road of the latter company was being operated by a receiver, and these cars had been loaded at Chicago with kegs consigned to the Peoria Sugar Refinery, at Peoria, and were transported over that road to Pekin, and thence, by the receiver, to Peoria, over the line of the appellant's road, and left by the employes of the receiver upon appellant's side-track at Peoria.  The agent of the Chicago, Pekin and Southwestern Railway Company at Peoria, acting for the receiver, ordered appellant to take the cars and deliver them to the sugar refinery, which is situated upon one of appellant's switch tracks, which appellant did.  It is conceded that it was the duty of appellant to transport these cars to the sugar refinery on its tracks, and to leave them there until they were unloaded by the employes of the sugar refinery, when appellant was to take the cars to its storage yards, to be kept until called for.  It is also stipulated that appellant had nothing to do with the unloading of the cars.  It also appears that the cars might be ordered from the tracks where they were left by the connecting lines, by the railroad company by which they had been transported or by the industry to which they were consigned; and in like manner empty cars could be ordered from the storage yards or elsewhere, to be taken to any industry, to be loaded for shipment over the line of road owning or controlling such cars,— and such was the recognized course of business.

On October 27, 1881, the sugar refinery was destroyed by fire, and the cars in controversy, standing upon appellant's tracks by the side of the refinery, were likewise consumed. Whether the same had been unloaded at the time of their destruction does not appear. The value of the cars is fixed by stipulation. The case was tried by the court, without a jury, and the propositions were submitted to the court by the parties raising the question of the liability of appellant to appellee as a common carrier of the cars, only.

Messrs. Stevens & Horton, for the appellant:

Plaintiff having leased the cars to the Chicago, Pekin and Southwestern Railway Company, or to Reed, and having parted with all right to the possession and control for a term extending over their destruction, and the defendant having received and handled the cars, under a contract with such lessee, in furtherance of his right to their use, as lessee, in his business, in carrying out an undertaking by him wholly independent of plaintiffs, and in which they had no interest or discretion, they, the plaintiffs, can not maintain assumpsit against the defendant for a failure to perform an agreement so made for such purpose with Reed, their lessee. They can only maintain an action on the case for the injury to their reversionary interest. *Harvey* v. *Railroad Co.* 74 Mo. 538; *Weed* v. *Railroad Co.* 19 Wend. 534; *Griffith* v. *Ingledew*, 6 S. & R. 435; *Swift* v. *Mosely*, 10 Vt. 208; *White* v. *Griffin*, 4 Jones, 139; *Railroad Co.* v. *Kidd*, 7 Dana, 245.

The declaration merely alleges a simple, implied promise by defendant to safely carry and deliver certain cars delivered to it, while the evidence shows that it received and handled the cars under and because of a certain contract, under seal, containing many terms and conditions not declared on. The variance is fatal, and plaintiff can not recover. Hutchinson on Carriers, sec. 754; *Hall* v. *Pennsylvania Co.* 90 Ind. 459; *Darlington* v. *Fredenhagen*, 18 Bradw. 273; *Meyers* v. *Schemp*,

67 Ill. 469; *Camp* v. *Steamboat Co.* 43 Conn. 333; *Fairchild* v. *Slocum,* 19 Wend. 329; *Stump* v. *Hutchinson,* 11 Pa. St. 533.

It is competent for a carrier, by express contract, to limit his liability for loss of goods otherwise than by his negligence. *Railroad Co.* v. *Jonte,* 13 Bradw. 424.

A contract made by one carrier with a connecting carrier for the transportation of merchandise, in which the liability of such connecting carrier is limited, is binding upon the owner of the goods. *Express Co.* v. *Palmer,* 48 Ga. 85; *N. J. S. N. Co.* v. *Bank,* 6 How. 343.

When the cars were placed on the track at the sugar refinery, defendant's liability as a carrier ended. *Railway Co.* v. *Railway Co.* 123 Ill. 594; *Railway Co.* v. *Railway Co.* 109 id. 135; *Railroad Co.* v. *Railroad Co.* 26 Minn. 243; *Railroad Co.* v. *Railway Co.* 25 Fed. Rep. 317.

Defendant was only bound to make such delivery as the nature of the thing carried allowed. *Railroad Co.* v. *Wood,* 71 Ala. 215; *Mills Co.* v. *Railroad Co.* 32 Am. and Eng. Ry. Cas. 456.

Before its liability as a carrier again commenced, plaintiff must show that the cars were unloaded, and that nothing further remained to be done to place them in readiness for further carriage. *Railroad Co.* v. *Montgomery,* 39 Ill. 335; *Railway Co.* v. *Hunter,* 18 Am. and Eng. Ry. Cas. 527; *O'Neil* v. *Railroad Co.* 60 N. Y. 138; *Baron* v. *Eldridge,* 100 Mass. 455; *Railway Co.* v. *Barrett,* 36 Ohio St. 448; *Guilford* v. *Smith,* 80 Vt. 49.

Mr. H. W. Wells, for the appellee:

The only question in the case is, was the appellant liable as a common carrier of the cars as well as their freight, and was its liability as to the cars terminated before the cars reached their destination, — that is, the storage yard. In other words, did the stoppage to unload freight complete the transportation of the cars which were destined for another

point.    This point is decided in this State in *Railway Co.* v. *Railway Co.* 109 Ill. 135.

Appellant seeks to escape liability on the ground that there was a contract between the Chicago, Pekin and Southwestern Railway Company and appellant. It is admitted, however, that appellee was a stranger to that contract, and knew nothing of its existence. Of course such contract did not affect the appellee.

It is said that the owner of the cars having leased them to another, can not recover,—that the owner, only, has the right of reversion in them. This position might have force if the suit were for the use, and the injury did not affect the reversion. But it is admitted the plaintiff's interest in the cars was the sum for which judgment was rendered.

Mr. Justice Shope delivered the opinion of the Court:

It is stated by counsel for appellee: "The only question in the case is, was appellant liable as a common carrier of the cars, and was its liability as to the cars terminated before the cars reached their destination,—that is, the storage yard? In other words, did the stoppage to unload freight complete the transportation of the cars which were destined for another point?" Other points are made by appellant as to the right of appellee to recover, which, in the view we take of the case, it will be unnecessary to discuss or determine. No negligence is charged, and the only question is, was appellant liable as common carrier of the cars at the time of their destruction.

In *Peoria and Pekin Union Ry. Co.* v. *Chicago, Rock Island and Pacific Ry. Co.* 109 Ill. 135, we held that a railroad company receiving cars from a connecting line of road for transportation over its line, became, in the absence of a special contract, a common carrier of the cars, as well as of the freight therein. We are of opinion that the doctrine there announced is sustained both by reason and authority. *Mallory* v. *Tioga Ry. Co.* 39 Barb. 488; *Connecting Ry. Co.* v. *Wabash, St. Louis*

*and Pacific Ry. Co.* 123 Ill. 594; *Missouri Pacific Ry. Co.* v. *Chicago and Alton Railroad Co.* 25 Fed. Rep. 317.

The facts conceded establish that the cars in question were taken by appellant, by the order and direction of the person who had authority to control the same, from the side-track of appellant's road, where they had been left by the transporting company, and were by it delivered, upon appellant's tracks, to the sugar refinery, the consignee of the freight contained in the cars, to be by the consignee unloaded, when it would become the duty of appellant to transport the cars to its storage yard, where, ordinarily, they could remain until needed in the course of business. It is also conceded that the appellant company had no duty in respect of the unloading of the cars, and no control in fixing the time they should remain at the industry for that purpose. It appears, however, that the sugar refinery was slow in unloading consignments to it, and the record is wholly silent as to whether the cars had or had not been unloaded when they were burned.

The point is sharply made by counsel, upon the refusal of the court to hold the fourth proposition submitted by the defendant as to the burden of proof, as to whether the cars had been unloaded at the time of the fire. By that proposition the court was asked to hold, in substance, that if the cars, just previous to their destruction, had been delivered to the defendant by the receiver of the transporting line, to switch to the Peoria Sugar Refinery to be unloaded, and thence, when unloaded, to the storage yard of the defendant, and defendant did switch the cars to the Peoria Sugar Refinery to be unloaded, as it was directed, and the defendant had nothing to do with the unloading, but that it was to be done by the refinery, and when destroyed the cars were on such track where the defendant was directed to place them by the receiver or his agent, if proved, and had not then been unloaded, of which issue the burden of proof is on the plaintiff, then plaintiff can not recover, etc. The court struck out the words, "of which

issue the burden of proof is on the plaintiff," and added to the proposition the following: "And the burden of proof is on the plaintiff to make out its cause of action; but the relation of common carrier being once shown, the burden is shifted to the defendant to show that at the time of the loss its liability as such had terminated."

It is manifest that in determining the question thus raised it will be necessary to consider the proposition of counsel before quoted,—that is, whether the stoppage to discharge the car of its freight, and over which appellant had no control, changed the liability of appellant during such stoppage, although the car, after being unloaded by the consignee of the freight, was to be again taken by the appellant to its yards for storage.

It is insisted that *Chicago, Rock Island and Pacific Ry. Co.* v. *Peoria and Pekin Union Ry. Co. supra*, has determined this question favorably to appellee, and it must be conceded to be so unless that case is distinguishable from the one at bar. It is stated in the opinion of the court in that case, that the Chicago, Rock Island and Pacific Railway Company placed upon the transfer track of appellant company a car, to be transferred by the latter, over its switch tracks, to the Monarch Distillery, consignee of the contents of the car. The car was taken by appellant company, delivered to the consignee on appellant's tracks, and unloaded, and was afterwards taken by appellant, without the knowledge or consent of the Chicago, Rock Island and Pacific Railway Company, to another industry, to be there reloaded, and at which it was destroyed by fire. From the statement thus made it appears that at the time of the destruction of the car it had been retaken by appellant company from the Monarch Distillery and transported elsewhere to be loaded, without authority of the owner company. It is stated that there was evidence tending to show an understanding among the connecting railroads doing business with appellant, that if other shippers desired cars,

appellant, without any specific order to that effect, was at liberty to place them in position to be loaded, and then return them to the company owning the cars, to be shipped, and that such cars were delivered by appellant under the order of the industry at which they were burned; yet that fact seems not to have affected the determination of the cause, and the case was made to turn upon the fact that defendant had exclusive control of the car while on its tracks, and was under obligation to return the same to the owner company when unloaded by the consignee. If the car had been destroyed at the distillery while there to be unloaded by the consignee of the goods therein, it seems to us that a different question would have arisen; but the defendant assumed control of the car after its freight was discharged, and instead of returning it to the owner, took it elsewhere, where it was destroyed. It was held in that case, that the Chicago, Rock Island and Pacific Railway Company having parted with the care and control of the car, and having entrusted it to the defendant, could not, at any point on its road, interfere for its safety, and that the duty attached to appellant to return the car to the owner, and it was therefore liable. as a common carrier. There was no duty to return the car until delivered at the distillery and the freight had been unloaded, but such liability arose, if at all, upon appellant's again assuming control of the car to remove it from the distillery.

In the case at bar, appellant received from the transporting line, (appellee's lessee,) in the regular course of its business, the cars in question, to be transported over its tracks to the sugar refinery, there to be left standing, on appellant's tracks at the refinery, until unloaded by the consignee of the contents of the cars. Having nothing to do with the unloading, and having delivered the cars on the track at the refinery, its whole duty as common carrier of the freight contained in the cars was at an end. The transit of the goods had terminated, and the cars on the track were so far delivered into the control

of the refinery as to enable it to discharge the freight. It is not questioned that there was a complete delivery of the cars and contents to the refinery in proper time and manner, and at the proper place, for the purposes contemplated,—that is, that the refinery company might unload the freight. Appellant had no control of the time such cars should remain at the refinery for such purpose,—that, it would seem from the course of business, was in the discretion of the consignee of the freight. While transporting the cars, and in complete, uninterrupted control of them, appellant was liable, as a common carrier, for injury to these cars not caused by the act of God or the public enemy. *Mallory* v. *Tioga Ry. Co. supra; Vermont and Massachusetts Railroad Co.* v. *Fitchburg Railroad Co.* 14 Allen, 462; *Atchison, Topeka and Santa Fe Ry. Co.* v. *Denver and New Orleans Railroad Co.* 16 Am. and Eng. Ry. Cas. 57; *Missouri Pacific Ry. Co.* v. *Chicago and Alton Railroad Co. supra.*

By the terms of the contract of carriage, the control of the goods ceased absolutely by the delivery to the consignee on the track, and was suspended, as to the cars, for an indefinite period, the duration of which was to be determined, not by appellant, but by the consignee of the goods. Until the consignee had unloaded the cars, appellant had no right to remove them, and take them to its storage yard, or other place of safety. The course of business, as well as the contract of appellant with the connecting lines, contemplated that upon switching the cars to the industries reached by appellant's tracks, the cars were to be permitted to stand upon such tracks to suit the convenience of the consignee of the goods shipped, and while the contracting roads undoubtedly might have limited the time for the stoppage of the cars for the purpose of unloading, it does not appear that they did so, or that any custom or usage prevailed that would fix the same.

In the case of *Missouri Pacific Ry. Co.* v. *Chicago and Alton Railroad Co. supra,* ten loaded cars were received by the one

road for transportation over its lines from the other, and it was held liable, as a common carrier, for all injuries received by the cars while *en route;* but it was held, that if destroyed after the carriage had terminated, and there had been a delivery, or a tender to deliver, to the consignee, there was, as to the cars, no liability as a common carrier, and although the cars remained on the tracks of the transporting company, its liability was that of a warehouseman, only.

In *Connecting Ry. Co.* v. *Wabash, St. Louis and Pacific Ry. Co. supra,* the cars, laden with coal, had been delivered to the Connecting Railway Company for delivery to the consignee, and were taken by the latter from the tracks of the Connecting company, over its private tracks, to be discharged of their freight, after which they were to be re-delivered to the Connecting company, to be returned to the owner.   While in the possession of the consignee the cars were burned, and it was insisted that because the cars were to be returned to the owner company by the Connecting company, it was liable as common carrier of the cars; that the contract of carriage not being complete until the cars were returned to the owner company, the liability as a carrier continued.   But it was held, that as the cars were shoved upon the consignee's private tracks, in conformity with the previous course of business, they had reached their destination, and that consequently the liability as common carrier of them ceased.   It was also there said: "Had the glucose company (consignee) unloaded and returned them, as it was the custom to do, the defendant's liability as a common carrier would have commenced anew, and continued until they were delivered to appellee."   It is true, in that case the cars were placed on the private tracks of the consignee, and taken a few hundred feet away from the Connecting Railway Company's track, to be discharged of their freight; but that can not, in our opinion, distinguish the case from the one at bar, in principle.   It was in contemplation of the parties that the car was to be taken to a point upon the railroad and

was there to be delivered to the consignee, and it can not be important whether the car was taken a few feet off of appellant's tracks or left standing thereon, in considering whether the liability as insurer continued. In either case the car had passed from that absolute control of appellant to which it is entitled as a common carrier, and it must be held that when the car and its contents were delivered to the consignee, on the switch track of the appellant, at the industry to which they were consigned, the car had reached its destination, and that while the car was under the control of the consignee the liability of the carrier was suspended, to again attach when the car was ready for further transportation to the storage yard of the appellant. In the interim, which might be for a shorter or longer period of time, as determined by a party over whom appellant had no control and for whose acts it was in nowise responsible, appellant, although the cars were standing upon its switch tracks, would have no such control as would authorize it to take the cars elsewhere for safety, and it would be manifestly unjust, and inconsistent with the reason for applying the rule, to hold appellant responsible during that time as an insurer.

The trial court was correct in its holding that "the relation of common carrier being once shown" it is presumed to continue, and the burden is on the carrier to show that at the time of the loss its liability as such had terminated. This, however, was done by showing delivery to the consignee, and if, in further disposition of the cars, under the contract of the parties or in the usual course of business, the liability again attached, the burden was upon plaintiff to show it. If the cars were delivered to the consignee until unloaded, and the liability as common carrier ceased while the same were in its custody, such liability would not revive or again attach until the cars were unloaded. As we have seen, the case does not proceed upon the basis, nor is it contended, that appellant

was guilty of negligence in not removing the cars after they were unloaded, or is guilty of negligence in any other respect.

We are of opinion that in view of the facts shown and admitted, the court erred in holding that the liability of appellant was that of common carrier, and that if plaintiff intended to rely upon the duty of appellant to remove the cars to its storage yard, the burden was upon it to show that the duty had attached.

The judgments of the Appellate and circuit courts are reversed, and the cause remanded.

*Judgment reversed.*