## CENTRAL OF GEORGIA RAILWAY COMPANY *v.* MILLEDGEVILLE RAILWAY COMPANY.

Under the facts of this case, the defendant railroad company, at the time the cars were burned, did not hold them as a common carrier; and as the defendant was not negligent in respect to the fire, it was not liable for the injury to or destruction of the cars.

AUGUST 13, 1912.

Action for damages. Before Judge J. B. Park. Baldwin superior court. February 14, 1911.

The Central of Georgia Railway Company brought suit against the Milledgeville Railway Company for damages to two freight-cars by fire. By consent of the parties the case was tried before the judge, without the intervention of a jury, upon the following agreed statement of facts, with the right by either party to except to the decision of the judge:

"1. The Milledgeville Railway Company is chartered as a railroad corporation. It has no freight-cars of its own, but it operates over its own railroad tracks in and around the city of Milledgeville, Georgia, connecting with the Central of Georgia Railway and the Georgia Railroad. It transports, with its own engines and employees, empty freight-cars and cars loaded with freight between its junction with the Central of Georgia Railway and stores, warehouses, industries, and other places of business of consignees, located upon or adjacent to its tracks in and around Milledgeville. It charges and collects from the consignees or shippers, as the case may be, the sum of $2.50 per car for each loaded car transported by it in either direction. When loaded cars are received by it from its connection or from shippers on its line, it makes no charge for the movement of the empty car in the opposite direction; the revenue derived by it from the transportation of the loaded car covering its compensation for the service in moving the empty car.

"2. At the date of the transaction referred to in the petition, and for many years prior thereto, the following custom or understanding existed between plaintiff and defendant as to the receipt of cars from the Central Railway at Milledgeville, and their return, either empty or loaded, to wit:  (*a*) At the time these cars were burned, defendant had no specific agreement, written or otherwise, with either the Central Railway or the Georgia Railroad. The actual practice was as follows: When defendant had prospective loading for either line, and also had empty cars in its possession, whether Central's, Georgia's, or belonging to a foreign line, defendant held them and loaded them back to the line from which they had been received.  (*b*)  All Central of Georgia Railway system cars which are delivered by it loaded to the Milledgeville Railway, consigned to some point on the defendant's line, to be promptly returned by it when unloaded, except that such cars may be held by the Milledgeville Railway for immediate reloading of freight from some industry or place of business on its line, to be shipped via the Central of Georgia Railway; or if the Milledgeville Railway is advised by one or more of the places of business or industries on its line that in the next day or so a car, or cars, will be needed, to be loaded with freight for shipment to some point on or via the Central of Georgia Railway, the Milledgeville Railway retains or holds such Central Railway cars as are in its possession, necessary for this purpose, until it has positive orders from shippers on its line for placing the cars; this being done in order to save both railroads unnecessary work in the switching or movement of empty freight-cars.  (*c*)  When the Milledgeville Railway had no empty cars of the Central Railway in its possession as above, and such empty cars were desired by shippers or industries on its line (the Milledgeville Railway Company's) for shipment of freight via the Central of Georgia Railway, the Milledgeville Railway would call upon the Central Railway for empty cars, which would be delivered by the plaintiff to the defendant, transported by the latter on its tracks to the place of business of the shipper, and returned by the Milledgeville Railway to the Central Railway when loaded.

"3.  The cars referred to in the petition and in this statement of facts were received by the Milledgeville Railway from the Central Railway in pursuance of the foregoing custom or understanding.

"4.   On March 28th, 1907, the Central Railway delivered its, system car No. 25440, loaded with lime, to the Milledgeville Railway, at the junction of the tracks of the plaintiff and defendant, for transportation and delivery to the Cook Lumber Company, on the defendant's line at Milledgeville.   The loaded car was transported by the defendant and placed at the Cook Lumber Company's lime-house, April 6th, 1907.   Defendant was notified by the consignee that the car was empty, April 9th, 1907.   Defendant thereafter held said empty car in its possession, intending to place it at the clay pit in Milledgeville, a point on its line, on April 10th, 1907, to be loaded by a shipper, and thereafter transported and redelivered by defendant to the Central of Georgia Railway.   Plaintiff was not advised of the defendant's intended use of the car and had no knowledge of defendant's intention.   There was no agreement or custom requiring such notice.

"5.   On March 18th, 1907, the Central of Georgia Railway Company placed a foreign car (C., N. O., & T. P. Car No. 12251) at the junction of the tracks of plaintiff and defendant, loaded with flour for A. J. Carr Co., whose place of business was on the defendant's line in Milledgeville, Georgia.   The car was placed by the defendant at the consignee's warehouse on March 20th, 1907. It was unloaded by the consignee, and was, on March 21st, 1907, moved empty from the said warehouse by the defendant to the Oconee River Mills, a point on defendant's line in Milledgeville, Georgia.   It was there loaded by the Oconee River Mills with meal, consigned to Athens, Georgia, via the Georgia Railroad.   It was moved by the defendant from the Oconee River Mills on March 26th, 1907, and delivered by the defendant to the Georgia Railroad for transportation to Athens, Georgia.   It was not known to defendant at the time the car was placed at the Oconee River Mills that it was to be loaded for a station on the Georgia Railroad; but the fact that it was so loaded became known to defendant when the car was switched by it to the Georgia Railroad depot to be transported to Athens.   Defendant could have ascertained this fact, however, before the car was loaded, if it had inquired of the shipper.   Said car was made empty at its destination in Athens, Georgia, and was returned empty by the Georgia Railroad to Milledgeville, April 7th, 1907.   The defendant thereafter held said car in its possession, intending to place it at the Oconee River

Mills, a point on its line, on the morning of April 10th, 1907, for loading with meal to be routed via the Central of Georgia Railway from Milledgeville. Plaintiff was not advised of defendant's use of the car, and had no knowledge thereof. There was no. agreement or custom requiring such notice.

"6. Central of Georgia system car No. 25440 was entirely destroyed by fire, and the foreign car (C., N. O., & T P. No. 12251) was damaged by fire while in the possession of the Milledgeville Railway, under the foregoing circumstances, on April 10th, 1907; the amount of said loss and damage aggregating the sum of $619.00; of which sum $444.00 was for the destruction of Central of Georgia car No. 25440, and $175.00 for damage to C., N. O., & T. P. car No. 12251."

It further appears from the record that the defendant, prior to the suit, agreed in writing with the plaintiff that the claim for damages to the C., N. O., & T. P. car No. 12251, delivered by the plaintiff to the defendant, might be joined in the action for damages to the car belonging to the plaintiff. Judgment was rendered for the defendant, and the plaintiff excepted.

*H. W. Johnson,* for plaintiff.

*Jos. B. Cumming,* for defendant.

FISH, C. J. (After stating the facts.) As will be seen from the foregoing agreed statement of facts, the only question in this case is whether the Milledgeville Railway Company (hereinafter referred to as the defendant), at the time of the fire, held the cars as a common carrier, and was therefore liable as such for their injury or destruction. We are aware of no decision of this court which throws any light upon the point. It has been held in other jurisdictions that railroad companies are bound to transport the cars of other companies, and, while so transporting and in complete control of them, are liable as common carriers for any injuries to them. New Jersey R. etc. Co. *v.* Pennsylvania R. Co., 27 N. J. L. 100; Mallory *v.* Tioga R. Co., 39 Barbour, 488; Vermont etc. R. Co. *v.* Fitchburg R. Co., 14 Allen, 462 (92 Am. D. 785); Missouri Pacific Ry. Co. *v.* Chicago & Alton Ry. Co., 25 Fed. 317; Peoria etc. Ry. Co. *v.* Chicago etc. Ry. Co., 109 Ill. 135; East St. Louis etc. Ry. Co. *v.* Wabash etc. Ry. Co., 123 Ill. 594 (15 N. E. 45); Peoria etc. Ry. Co. *v.* United States Rolling Stock Co., 136 Ill. 643 (27 N. E. 59, 29 Am. St. R. 348); Pittsburg etc. Ry. Co. *v.*

City of Chicago, 242 Ill. 178 (89 N. E. 1022, 134 Am. St. R. 316). In some of these cases it appears that the owner of the cars was liable for the charges for transporting them; and we think it fair to assume that such was a fact in all of them, except in Peoria etc. Ry. Co. *v.* Chicago etc. Ry. Co., 109 Ill. 135, where it is stated in the opinion: "The car in question was delivered to defendant [the switching company], to be carried over its road to the warehouse of the consignees of the freight it contained. A charge for the service to be rendered was made, and was paid by the consignees." In St. Paul etc. R. Co. *v.* Minneapolis etc. Ry. Co., 26 Minn. 243 (37 Am. R. 404), it appears that, by agreement between the parties (connecting railroad companies), the defendant was to receive the plaintiff's cars for delivery at a point on the defendant's line and to return them in as good condition as when received, ordinary wear and tear by use excepted. Both parties were to share the profits of the freight so carried, and defendant was to pay the plaintiff a fixed sum for the use of its cars. Without fault on the defendant's part, certain of the plaintiff's cars were destroyed by fire on the defendant's line, while being thus transported. It was held that the defendant was not liable. The court said: "It [the defendant] neither contracted nor undertook to perform any service as a carrier in transporting them [the cars] from one place to another, nor was it entitled to receive any compensation whatever for what it agreed to do in the way of taking and using them upon its road, and redelivering them to the plaintiff at Merriam Junction. It did not receive the cars so transported for hire, but for use on its line of road in doing a business of transportation which was common to both roads, and in the profits of which both companies were to share. The compensation agreed upon was to be paid by the defendant to the plaintiff for such use, and not by the latter to the former as a reward for transportation. These facts alone show that the defendant's liability, if any, was not that of a common carrier. . . As the bailment was reciprocally beneficial to both parties, no liability could attach to the defendant by reason of the destruction of the property entrusted to it as bailee, unless it occurred through some negligence on defendant's part, amounting to want of ordinary care." In the case at bar the defendant was to receive no compensation from the Central of Georgia Railway Company (herein-

after referred to as the plaintiff) for the transportation of cars delivered by it to the defendant. Nor was the defendant to pay the plaintiff anything for the use of such cars. Whatever may have been the reason for the custom or understanding in this respect between the parties, we may presume that it was reciprocally beneficial to both. Under our law the plaintiff was bound to deliver to the defendant the loaded cars, and the defendant was bound to receive and transport them to their destination (Civil Code, §§ 2655, 2756); the charge for their transportation was to be fixed by the Railroad Commissioners of the State. Ib. § 2631. If a railroad corporation doing business in this State "shall charge, collect, demand, or receive more than a fair and reasonable rate of toll or compensation . . for the use and transportation of any railroad-car upon its track, . . the same shall be deemed guilty of extortion," (Ib. § 2628); and any unjust discrimination in its rates or charges of toll, or any compensation by such railroad corporation for the use and transportation of any such car, is forbidden. Ib. § 2629.

As we have already stated, the only point for decision in this case is whether the defendant was a common carrier in respect to the cars in question at the time they were burned. In the view we take of the case, it is unnecessary to decide whether, under the agreed statement of facts, the defendant was a common carrier as to the cars while engaged in transporting them from the junction of the lines of the parties to Milledgeville, or in returning them to the junction. We leave this point open, as, in our opinion, the defendant did not, under the facts of the case, hold the cars as a common carrier at the time they were burned. The responsibility of a common carrier for goods received for transportation "ceases with their delivery at destination according to the direction of the person sending, or according to the custom of the trade." Civil Code, § 2730. If the defendant, when it received the loaded car of the plaintiff at the junction of the tracks of the plaintiff and defendant, for transportation and delivery to the Cook Lumber Company, on the defendant's line at Milledgeville, became, under the facts of the case, a common carrier both as to the car and the freight contained therein, when the car with its freight was delivered to the consignee to be unloaded by it, the defendant's relation as a common carrier to the car and its freight ceased and

was suspended until defendant retook possession of the car after it was unloaded. Missouri Pacific Ry. Co. v. Chicago & Alton R. Co., 25 Fed. 317; East St. Louis etc. Ry. Co. v. Wabash etc. Ry. Co., 123 Ill. 594; Peoria etc. Ry. Co. v. United States Rolling Stock Co., 136 Ill. 643. According to these decisions, if the defendant was a common carrier of the car while being transported, if the car had been destroyed by fire while in the possession and control of the consignee, the defendant would not have been liable, for the reason that the car would not then have been in the exclusive possession and control of the defendant. Plainly, for the same reason, if the car, after being unloaded by the consignee, had been redelivered to the defendant as a common carrier, and, in accordance with the custom and understanding between the plaintiff and the defendant then existing, it had been placed in the custody and control of another industry upon the defendant's line, to be there reloaded by such industry and then delivered to the defendant for transportation to the plaintiff's line, and the car had been burned, without fault on the part of the defendant, while being loaded by such shipping industry, or after being loaded by it and before it was returned to the defendant, then the defendant would not have been liable for its destruction. After the car had been unloaded by the consignee and returned to the defendant to be held by it under the custom and understanding between the parties—that is, that the car should be held by the defendant for a day or so, when the defendant had been advised that the car would be needed by an industry on its line, to be loaded with freight for shipment to some point on the plaintiff's line,—our opinion is that, in such circumstances, the defendant held the car as a bailee to await the time when, in accordance with the custom or understanding existing between plaintiff and defendant, the latter should again receive the car to transport it to the shipper on defendant's line, to be loaded by the shipper. So holding it by the defendant, in accordance with the custom or understanding existing between the parties, was for the benefit of both parties, as the defendant would be paid $2.50 by the shipper for the transportation of the freight by defendant to the plaintiff's line, and the plaintiff would receive its charges for transporting the freight over its own line. It is true that, while awaiting a shipment to be made the next day, the defendant had the exclusive possession and control of

the empty car, but this fact of itself, in our opinion, did not make the defendant a common carrier as to the car while it was thus in the possession and control of the defendant, if the relation of the defendant as to the car was ever that of a common carrier. Generally, all bailees have the exclusive possession and control of the goods or property bailed; yet they are not, as a rule, for that reason, held to be insurers of the goods or property so held. Suppose, under a custom or understanding existing between the plaintiff and defendant, the latter had the right to hold an empty car of the plaintiff, after its return by the consignee, for an additional time of, say, 30 or 60 days, or for an indefinite time, to await an order for it from a shipper on the defendant's line, could it be reasonably contended that the defendant, during all the time it held the car for such purpose, sustained the relation of a common carrier as to it, and was therefore to be held for such time as an insurer of the car? We think not. The fact that the car was to be held for such purpose for the short time of a day or so certainly can make no difference in principle. The car was received by the defendant from the consignee on the ninth of a given month, and the defendant was advised that a shipper on its line would need the car on the next day, to be loaded for shipment over the plaintiff's line, and the defendant intended to deliver it to the shipper for such purpose; the car, however, was destroyed by fire before the time for such delivery, without fault on the defendant's part. As we have already said, the defendant, in our opinion, was not liable in the circumstances for damages for the destruction of the car. Of course, we do not mean to hold that the mere fact that the car was stationary or not being actually transported by the defendant at the time it was burned would release the defendant from liability if it were a common carrier as to the car. If the car, while being transported with freight to the consignee, or while being returned loaded or empty to the plaintiff, had been stopped in the customary way, and had been destroyed while so stopped, the defendant, if a common carrier as to the car, would have been liable as an insurer.

What was the defendant's relation as to the C., N. O., & T. P. car? On March 18, 1907, the plaintiff placed this car at the junction of the tracks of the plaintiff and defendant, loaded with flour for A. J. Carr Co., whose place of business was on the

defendant's line in Milledgeville. The car was placed by the defendant at the consignee's warehouse two days thereafter, and was unloaded that day or the next, by the consignee. On March 21, it was moved empty from the consignee's warehouse by the defendant, to the Oconee River Mills, a point on the defendant's line in Milledgeville, where it was loaded with meal by the Oconee Mills, consigned to Athens, Georgia, and was delivered by the defendant to the Georgia Railroad, to be transported to its destination. It was so transported, unloaded, and returned empty over the Georgia Railroad to the defendant, on April 7. The defendant was holding it from the last-named date in accordance with the agreement or understanding between it and the plaintiff, and in the regular course of business, to be loaded by the Oconee River Mills with meal on April 10th, and then to be transported by defendant over its line to the plaintiff's line, and then to be transported to its destination over the latter's line. It was damaged by fire, without fault on the part of the defendant, on April 10, at the same time the other car was burned. If this foreign car had been damaged during the continuance of what we may term the Athens incident, the defendant's liability for such damage would have presented a different question from the one actually involved in the case. We are not here concerned with any redress, if any, the plaintiff may have, against the defendant for its unauthorized use of its car during the Athens incident. When the car came back into the possession of the defendant, the customary relations as to it were resumed, and we think that the defendant's relation to it was the same as that of the defendant to the plaintiff's own car, while this foreign car was held from the 7th to the 10th of April, to be loaded on the latter date by the Oconee Mills, and then to be returned by the defendant to the plaintiff to be transported over the latter's line.

It follows from what we have said that the court did not err in finding for the defendant as to both cars. In reaching our conclusion we have not failed to consider the decision made in Peoria etc. Ry. Co. *v.* Chicago etc. Ry. Co., 109 Ill. 135, which is strongly relied upon by counsel for plaintiff in error in the case at bar. In that case, the defendant railroad company's principal business was switching cars for other railroad companies. Its tracks were connected with those of other railroad companies by a transfer

switch, and with mills, elevators, and manufactories in and around the city where its business was transacted. The plaintiff corporation brought a car loaded with freight to the city, and placed the same on the transfer track, with orders to the defendant to ship the same to a certain distillery, to which place it was taken and unloaded, the consignees to pay the transfer charges. When unloaded it was taken by the defendant, without orders from the plaintiff, to a sugar refinery to be loaded and then switched to the transfer track for shipment. On the same day the sugar refinery was burned, and also the car, which was standing in close proximity. No negligence as to the fire was attributed to the defendant. There was evidence tending to show that it was the common understanding among the companies doing business at this point, if other shippers desired cars, that the defendant, without any specific orders to that effect, was at liberty to place them at other places of business to be loaded, and when loaded they would be returned to the company owning such cars to be shipped. It was held that the defendant was liable, as a common carrier, to the plaintiff for the value of the cars so destroyed. We can not agree to the conclusion reached by that learned court under the facts stated. Moreover that court in two later cases (East St. Louis Ry. Co. *v.* Wabash etc. Ry. Co., 123 Ill. 594; Peoria etc. Ry. Co. *v.* United States Rolling Stock Co., 136 Ill. 643) seems to us to have made rulings which in principle conflict with what was held in the former case, though the former case was not expressly overruled.

*Judgment affirmed. All the Justices concur.*