The Pittsburg, Cincinnati, Chicago and St. Louis Railway Company, Appellee, vs. The City of Chicago, Appellant.

*Opinion filed October 26, 1909—Rehearing denied Dec. 8, 1909.*

1. Pleading—*defects in form are cured by verdict.* Defects in a declaration in matters of form, only, are cured by verdict.

2. Appeals and Errors—*a constitutional question is waived by appealing to the Appellate Court.* By appealing to the Appellate Court and submitting the case upon errors which that court had power to consider, the appellant waives constitutional questions.

3. Carriers—*common carrier is a bailee and may recover full value of property from wrongdoer.* A common carrier is a bailee for hire, and has such an interest in the property that he may resort to any means for its protection to which the absolute owner could have recourse and may recover the full value of the property from the wrongdoer who destroys it; and this is true although the real owner may also have a right of action against the same wrongdoer for the value of the property destroyed.

4. Same—*measure of liability of carrier for goods destroyed.* A common carrier for hire is bound to receive for transportation over its lines cars of other common carriers, and as to such cars it sustains the same relation as it does to ordinary freight and is held to the same measure and character of liability to the owners of the cars as to owners of other property received for carriage.

5. Same—*liability of carrier is that of an insurer of the safety of goods.* The liability of a common carrier for hire is that of an insurer of the safety of property against all losses except such as arise from the act of God or the public enemy; and in case of cars of other carriers in its charge the liability of the carrier is absolute, and the measure of such liability is the full value of the cars destroyed.

6. Same—*the "public enemy" does not embrace mobs and riots.* The "public enemy" for whose acts in destroying property a common carrier is not liable in damages to the owner means the enemy of the country and not of the carrier, and does not embrace mobs and riots.

7. Mobs and Riots—*word "owner," in Mobs and Riots act, includes a bailee for hire.* The word "owner," as used in the title and in the body of the Mobs and Riots act of 1887, giving the owner whose property has been destroyed by a mob a right of ac-

tion, is not limited to the real owner of property but includes a bailee for hire having possession of the goods when destroyed.

8. SAME—*Mobs and Riots act of 1887 merely created a liability where none had previously existed.* The Mobs and Riots act of 1887 merely created a liability where none had previously existed, but it did not take away from a person or corporation any existing right of action against a wrongdoer for the value of property destroyed nor in any way affect the remedy in such action.

9. SAME—*principle of Mobs and Riots act.* The principle upon which the Mobs and Riots act of 1887 rests is, that it is the duty of a municipality to preserve peace and good order and protect private property, and that, having power to perform such duty, a failure or neglect to perform it, resulting in the destruction of property by mobs and riots within its borders, makes the municipality a wrongdoer.

10. SAME—*bailee for hire may sue persons composing the mob which destroyed property.* The Mobs and Riots act of 1887 expressly preserves the right of action to the property owner against the persons composing the mob or riot by which his property was destroyed, and as against such persons the action may be maintained by a common carrier in possession of the property as bailee when the goods were destroyed.

11. SAME—*common carrier in possession as bailee may sue city for destruction of property by a mob.* The Mobs and Riots act of 1887 makes the municipality liable for three-fourths of the value of property destroyed, to the same person or corporation who has a right of action against the persons composing the mob or riot, and hence authorizes an action against the municipality by a common carrier for three-fourths the value of property destroyed while in its possession as bailee for hire, including cars of other carriers.

12. SAME—*a recovery by bailee is a bar to suit by real owner.* Either the real owner or the bailee for hire in whose possession the property was when it was destroyed by a mob may recover from the municipality three-fourths of the value of the property destroyed, but a recovery by one is a bar to a suit by the other.

13. SAME—*suit by bailee for hire is in behalf of the real owner.* A suit against a municipality to recover for destruction of property by mob, though brought in the name of the common carrier having possession of the goods at the time they were destroyed, is a suit "in behalf of the real owner," within the meaning of the Mobs and Riots act.

14. SAME—*when notice is sufficient under the Mobs and Riots act.* A notice to a city, signed by the second vice-president of a common carrier, who had charge of the legal department of the

carrier corporation, attached to which notice is a schedule containing an itemized statement of the property destroyed, the date when and the place where destroyed and the amount of damages claimed to have been sustained by the destruction of each item of property, is a sufficient notice and demand under the Mobs and Riots act.

15. Same—*whether cars destroyed were in transit is a question of fact.* Whether the cars destroyed by a mob were or were not in transit at the time is a question of fact under the evidence, and if there is evidence tending to show they were not in transit the Supreme Court cannot reverse upon the ground that the lower court's finding that the cars were not in transit was against the weight of the evidence.

16. Evidence—*nature of business affects question of what is the best evidence of transactions.* In determining what is the best evidence the nature of the case will admit of, and what is secondary evidence, regard must be had to some extent to the nature and character of the business to which the evidence relates and to the method of conducting such business.

17. Same—*car report record known as the "Borner record" is competent.* As tending to identify the cars destroyed by a mob while they were in the yards of a common carrier, a car report known as the "Borner record," showing the arrival and movement of cars in the yards, is admissible, though the original report slips from which the record was made are destroyed, where other slips which were duplicates of the ones destroyed, in so far as they showed the arrival of the cars, were produced and identified by the persons who made them, and where the record was identified by the clerk who made it, who testified that the entries therein were correctly made by him and that the system had been in use for thirty years.

18. Same—*"historical records" of cars are admissible.* As an aid in determining the value of cars at the time of their destruction, "historical records," technically known as "Record of car equipment," which purport to show the time and place where the cars were built, the character of their construction and the extent to which they had since been repaired or re-built, are admissible, in connection with the testimony of competent witnesses as to depreciation in value of cars from age and use, but they are not conclusive.

Appeal from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of DuPage county; the Hon. A. H. Frost, Judge, presiding.

Edward J. Brundage, Corporation Counsel, (Robert N. Holt, Assistant Corporation Counsel, of counsel,) for appellant:

No property except that of which the plaintiff was the owner could be recovered for under the averments of the declaration nor under the provisions of the statute of 1887. *Turner* v. *Cross*, 83 Tex. 218; *Coombs* v. *People*, 198 Ill. 588; *Bowen* v. *John*, 201 id. 295; *Johnson* v. *Crookshanks*, 21 Ore. 340; *Jarrott* v. *Vaughn*, 2 Gilm. 132; *Edwards* v. *Hill*, 11 Ill. 22; *Merritt* v. *Kewanee*, 175 id. 537; *Brown* v. *Railroad Co.* 166 id. 437; *Cook & Rathbone Co.* v. *Sanitary District*, 177 id. 509; *Dock Co.* v. *Morawetz*, 195 id. 403; *McFeters* v. *Pierson*, 15 Colo. 201; *People* v. *Manufacturing Co.* 99 Ill. 363; *Insurance Co.* v. *Heiss*, 141 id. 35; *Chicago* v. *Cement Co.* 178 id. 379; *Law* v. *People*, 87 id. 395; *County of Allegheny* v. *Gibson*, 90 Pa. St. 420; *Beardstown* v. *Virginia*, 76 Ill. 43; *Coal Co.* v. *Cobb*, 94 id. 55; *Bank* v. *Meadowcroft*, 95 id. 124.

The declaration makes no case for recovery as a common carrier or bailee,—only as owner. 1 Chitty's Pl. 169-171; 2 id. 487, 488; 1 Shinn's Pl. & Pr. sec. 117.

A statute conferring a right of action upon a particular person therein described, prohibits such right of action in any other person. *Gaddis* v. *Richland County*, 92 Ill. 119; *Sammis* v. *Clark*, 13 id. 544; *Diversey* v. *Smith*, 103 id. 378; *Coal Co.* v. *Hood*, 77 id. 68; *Foster* v. *St. Luke's Hospital*, 191 id. 94; *Stuart* v. *Hamilton*, 66 id. 253; *Walcott* v. *Lawrence Co.* 26 Mo. 277; *Sanitary District* v. *Hanberg*, 226 Ill. 483; 1 Sutherland on Damages, sec. 129.

Loesch, Scofield & Loesch, (Charles J. Scofield, and L. C. Cooper, of counsel,) for appellee:

The declaration alleges that the "plaintiff was possessed, as of its own property," of the railway equipment, etc., and also that "the property of the plaintiff was destroyed or injured." These are proper forms of allegations of own-

ership, whether such ownership is absolute or special. *Fort Dearborn Lodge* v. *Klein*, 115 Ill. 177; 2 Bishop on Crim. Proc. (4th ed.) secs. 699, 718, 720, 721; *Herschbach* v. *Cohen*, 207 Ill. 517; 3 Chitty's Pl. 1098.

Possession of personal property is *prima facie* ownership, and the allegation of possession will amount to an allegation of ownership when the declaration is first questioned after verdict. *Bergen* v. *Riggs*, 34 Ill. 170; *Railway Co.* v. *Callaghan*, 157 id. 406.

The special ownership of a bailee or lessee is sufficient to authorize an action under the Mobs and Riots act. *Chicago* v. *Pennsylvania Co.* 119 Fed. Rep. 499.

The statute authorizes this suit to be brought "by or in behalf of the party whose property was thus destroyed or injured." This authorizes suit by a common carrier, by a bailee or lessee in possession. As applied to a common carrier, special ownership is sufficient. The law has special reference to common carriers, as appears from the exception, "except property in transit."

A common carrier may recover the full value of goods as against a third person having no right to them. 6 Cyc. 435, note 4; *White* v. *Webb*, 15 Conn. 302; *Ingersoll* v. *VanBokkelin*, 7 Cow. 670; *Lyle* v. *Barker*, 5 Binn. 457.

An action under this statute lies for goods appropriated by the mob and carried away. The statute authorizes any appropriate action, and trover might be brought in such case. *Sarles* v. *New York*, 47 Barb. 447.

Mr. Chief Justice Farmer delivered the opinion of the court:

This action was brought by appellee against the city of Chicago, appellant, under the act of 1887, to recover three-fourths of the damages alleged to have been sustained by appellee by the destruction of property by mobs in the city of Chicago during a strike of the employees of the Pull-

man Company and a sympathetic strike in their aid by the American Railway Union, in July, 1894.

The declaration avers that plaintiff is a common carrier of freight and passengers over its line of railroad, which is partly located within the limits of the city of Chicago, and was on the 6th day of July, 1894, "possessed, as of its own property," of certain property described in the declaration, situate within the limits of the city of Chicago, on and near its line of railway in said city; that on said day, within the limits of said city, in consequence of a certain mob or mobs, riot or riots, each then and there composed of twelve or more persons, within the limits of said city, a large quantity of the before described property was injured or destroyed, setting out a description of the property and its value. The declaration alleges that the property was not in transit at the time of its injury and destruction; that said injury and destruction were not occasioned or in any way aided, sanctioned or permitted by any carelessness or wrongful act of plaintiff or through any neglect of plaintiff to use reasonable diligence to prevent said injury and destruction; that within thirty days of the destruction of the property plaintiff gave notice to the defendant of said injury and destruction and demanded payment of three-fourths of the loss and damage sustained, but the defendant refused to pay the same, etc.

There was no demurrer to the declaration but defendant pleaded the general issue. A change of venue was taken from Cook county to DuPage county, where a trial by a jury was had, lasting substantially four months. A verdict was returned in favor of the appellee for $100,000, upon which the court, after overruling motions in arrest and for a new trial, rendered judgment. From that judgment an appeal was prosecuted to the Appellate Court for the Second District. One of the judges of the circuit court of DuPage county was also one of the justices of the Ap-

pellate Court for the Second District, and as appellee had, before entering upon the trial in DuPage county, applied for a change of venue from all of the judges of the sixteenth circuit, of which DuPage county is a part, said justice of the Appellate Court deemed it his duty to refrain from taking part in the consideration of the appeal to that court. The appeal therefore was considered by two justices of the Appellate Court, and the opinion states they agreed that under the pleadings and the evidence no other verdict than one in favor of appellee could have been returned. On the questions of law involved in the case, except as to the sufficiency of the declaration, we have not the benefit of the judgment of the Appellate Court, for the opinion states that they were unable to agree upon the right of appellee to recover for the destruction of property belonging to others than appellee and upon the competency of certain evidence offered and admitted over the objection of appellant. The opinion states that one of the justices of the Appellate Court was of opinion that the verdict was warranted and should be sustained even if the rulings of the court complained of in the admission of evidence were held to be erroneous; that the errors complained of, if they were errors, did not require a reversal of the judgment; while the other justice of said court was of opinion that the rulings complained of were erroneous and that the errors were of such a nature as to require reversal. The two justices of the said court being unable to agree as to whether the judgment of the circuit court should be reversed or affirmed, it was affirmed by operation of law, and the city has prosecuted an appeal to this court.

Appellant contends that the court erred in overruling its motion in arrest of judgment on account of the alleged insufficiency of the declaration. The objections made to the declaration are: First, that there is no sufficient allegation of ownership; second, that it does not locate the mob within the city of Chicago; third, that it does not suffi-

ciently negative the proposition that the injury or destruction of the property was not sanctioned or permitted by the carelessness, neglect or wrongful act of the plaintiff or through any neglect on its part to use reasonable diligence to prevent said injury and destruction; fourth, the declaration does not aver notice of plaintiff's claim for damages was presented to defendant within thirty days after the destruction of the property, as required by statute; fifth, that the declaration fails to state a cause of action, because the statute upon which the action is based is unconstitutional.

We do not regard the objections made to the declaration as of so substantial a character as to require their discussion in detail. If there were any defects, they were defects of form only, and were cured by verdict. As to the constitutionality of the law under which the action is brought, appellant waived that question by prosecuting its appeal to the Appellate Court. *Barnes* v. *Drainage Comrs.* 221 Ill. 627; *Case* v. *City of Sullivan*, 222 id. 56.

The most important question involved in the case, and the one to which counsel on both sides direct the greater portion of their briefs and arguments, is the right of appellee to recover for the destruction of cars in its possession as bailee or lessee, but which, in fact, belonged to other railroad companies. The proof showed a large number of the cars destroyed or injured were owned by other corporations but at the time of their destruction or injury were in possession of appellee in the usual course of its business as a common carrier. Appellant objected to the proof of damage on account of the destruction of such cars, but the objection was overruled and the proof admitted. The contention is that the statute was intended to authorize a recovery only by the absolute owners of the property, and that appellee not being such absolute owner, it was not entitled to recover.

The title of the act of 1887, under which this suit is brought, is: "An act to indemnify the owners of property

for damages occasioned by mobs and riots." The first section provides that in case of the destruction or injury of real or personal property, except property in transit, in consequence of any mob or riot composed of twelve or more persons, the city, if such injury or destruction occurs within a city, "shall be liable to an action by or in behalf of the party whose property was thus destroyed or injured, for three-fourths of the damages sustained by reason thereof." The second section provides that the action may be brought in case. The third section provides that no recovery can be had in such action if the injury or destruction of property was occasioned, aided, sanctioned or permitted by the carelessness, neglect or wrongful act of the person or corporation, nor unless the person or corporation shall have used all reasonable diligence to prevent such damages. The fourth section provides that the act shall not be construed to prevent "any person or corporation whose property has been injured or destroyed in consequence of any mob or riot" from maintaining an action against the person or persons participating in such mob or riot. The fifth section gives the city against which judgment has been recovered, a right of action against any person or persons engaged in the mob or riot. The sixth section provides for notice to the municipality, "by any person or corporation whose property shall have been destroyed or injured as aforesaid," within thirty days after the loss or damage occurs, and requires suit to be brought within twelve months after the destruction of or injury to the property.

It will be seen that the title of the act is an act to indemnify "the owners of property." By the first section the municipality is made liable to an action "by or in behalf of the party whose property" was destroyed or injured. By the fourth section the right of action of "any person or corporation whose property" has been injured, against any person or persons participating in the mob or riot, for damages thereby sustained, is preserved. The sixth section re-

quires the notice to be given "by any person or corporation whose property shall have been destroyed or injured." Appellant contends that these words and phrases, both in the title and in the body of the act, clearly indicate that it was the intention of the legislature that the action can only be maintained by the absolute owner of the property as distinguished from a person having a special property, such as a common carrier as bailee.

A common carrier is a bailee of property for hire, and has such an interest in the property that he may resort to any means for its protection to which the absolute owner could have recourse, and may recover the full value of the property from a wrongdoer who destroys it. "He is, in short, for all practical purposes, the owner of the property for the redress of all wrongs or injuries to it whilst in his possession." (2 Hutchinson on Carriers, sec. 779.) And this is true although the real owner might also have an action against the same wrongdoer for the value of the property destroyed. (Ibid. sec. 780.)

It is not denied by appellant that this is the rule at common law, but it is contended that this rule has no application to actions brought under the statute, for the reason, as stated, that the statute gives the right of action to the absolute owner only, and not to a bailee or one who has a special ownership of the property. We do not construe the act of 1887 to do anything more than create a liability where none had previously existed. It did not take away from a person or corporation having a right of action against a wrongdoer for the value of the property injured or destroyed, that right, nor in any way affect the remedy in such action. It provided for the liability of a party not liable at common law nor under any statute theretofore existing. The principle upon which such statutes rest is, that it is the duty of the municipality to preserve peace and good order and protect private property; that having the power to perform this duty, a failure or neglect to do so,

resulting in the destruction of property by mobs or riots within its borders, makes the municipality a wrongdoer. *City of Chicago* v. *Manhattan Cement Co.* 178 Ill. 372.

We do not think the word "owner," as used in the title of the act, or the phrase, party or corporation "whose property" has been destroyed, was intended to be used in the restricted sense contended for by appellant. The purpose of the act, as stated in its title, is to "indemnify" owners of property, and the first section makes the city liable to an action "by or in behalf of the party" whose property is destroyed or injured. Appellee is a common carrier for hire, and as such is bound, when requested, to receive for transportation over its lines cars of other common carriers, and as to such cars it holds the same relation as to ordinary freight received by it for transportation, and is held to the same measure and character of liability to the owner of the cars, as would attach with respect to any other property received by it for carriage. (*Peoria and Pekin Union Railway Co.* v. *Chicago, Rock Island and Pacific Railway Co.* 109 Ill. 135; *East St. Louis Connecting Railway Co.* v. *Wabash, St. Louis and Pacific Railway Co.* 123 id. 594; *Peoria and Pekin Union Railway Co.* v. *United States Rolling Stock Co.* 136 id. 643; *Schumacher* v. *Chicago and Northwestern Railway Co.* 207 id. 199.) The liability in such cases is that of an insurer of the safety of the goods against all losses except such as arise from the act of God or the public enemy. (*St. Louis, Alton and Terre Haute Railroad Co.* v. *Montgomery*, 39 Ill. 335; *Chicago and Alton Railroad Co.* v. *Shea*, 66 id. 471; *Chicago and Northwestern Railroad Co.* v. *Sawyer*, 69 id. 285; *Adams Express Co.* v. *Wilson*, 81 id. 339; *Merchants' Despatch Transportation Co.* v. *Kahn*, 76 id. 520; 1 Hutchinson on Carriers, sec. 42; 4 Elliott on Railroads, sec. 1454.) The "public enemy" means enemy of the country and not the carrier, and does not embrace mobs and riots. 1 Hutchinson on Carriers, secs. 315, 316; 4 Elliott on Railroads, sec. 1458.

The statute under consideration expressly preserves the right of action to the property owner against the persons composing the mob or riot, and as against such persons we think it clear the action could be maintained by a common carrier in possession as bailee.  It is well known, and the legislature must have had in mind, that mobs and riots are usually composed of persons of no financial responsibility, so that an action against them would be unavailing to recover the value of the property destroyed.  With this in view, and in view of the fact that the law confers upon municipal authorities power to suppress mobs and riots and to protect property, the act of 1887 made the municipality liable to the same person or corporation in whom the right of action existed against persons composing the mob or riot, for three-fourths of the value of the property destroyed by mobs or riots within its borders which it failed to suppress and control.  Any other construction of the act would in most, if not all, instances of cases like the one under consideration result in affording no adequate remedy to the person who suffers the loss.  The liability of a common carrier in possession of cars as bailee is absolute in such cases as the one at bar, and the measure of the liability is the full value of the cars destroyed.  In such case ordinary prudence and business judgment would lead the owner of the property to pursue its remedy against the bailee for full value rather than to resort to two actions,—one against the city for three-fourths of the value and another against the bailee for one-fourth.  It would follow, therefore, the bailee must in any event suffer a loss to the extent of one-fourth of the value of the property destroyed, and in the event of the bailor refusing to pursue its remedy against the city the bailee must suffer the entire loss if it cannot maintain this action.  Such construction does not enlarge the liability of the municipality, for, whether the damages are recovered by and paid to the bailee or the bailor, the liability is the same, and a judgment in favor of the bailee would

be a bar to a suit by the bailor. This construction gives effect to the purpose and intention of the act, which was indemnity to the person injured, whether that injury resulted to such person by reason of his being the absolute or special owner of the property destroyed. The statute authorizes the action "by or in behalf of the party whose property" was destroyed. While this action is in the name of the bailee it is none the less brought "in behalf of the owner." "But even when the real owner might sue, the action may still be brought in the name of the carrier, though the object of the suit may be a recovery for the full value of the goods, and a recovery by him will be a bar to any subsequent action by such general owner. But in case the carrier should recover the full value he will be entitled to the recovery only to the extent of his qualified interest in the goods, and as to the balance he will be held to be a trustee for the general owner, unless he has satisfied such owner for his loss." 2 Hutchinson on Carriers, sec. 780.

The precise question here involved was before the Circuit Court of Appeals for the seventh circuit in *City of Chicago* v. *Pennsylvania Co.* 119 Fed. Rep. 497. The action in that case was brought against the city by the Pennsylvania Company under the act of 1887 and a recovery was had for cars destroyed which were in the possession of the plaintiff as bailee but were owned by other carriers. Upon this question that court said: "The company was the owner in a sense though not having the general title, and it is clear that the recovery cannot be limited to the property to which the company had the full title. Possession with a special interest as bailee is enough. It was not necessary that all persons having an interest in the property should be made plaintiffs. It could not have been contemplated that under the statute all persons having any interest in the property should be required to come to Chicago and bring separate actions or join in one action for the recovery of damages. The statute did not change the general

rule at common law that a common carrier may sue in his own name and recover for the value of the property which has been injured or destroyed by another while in his possession, and that bailees of property may sue in their own name and recover for wrongful injury to property in their possession."

In our opinion there was no error in allowing a recovery for cars destroyed which were in the possession of appellee belonging to other carriers.

Appellant also contends that the notice given it by appellee within thirty days after the injury complained of, and the demand for payment of the damages sustained, are insufficient and should have not been admitted in evidence. The notice is signed in the name of appellee by its second vice-president, who the evidence shows had charge of the legal department of the corporation. A schedule attached to the notice contains an itemized statement of the property destroyed, the date when and the place where destroyed, and the amount of damages claimed to have been sustained by the destruction of each item of property. One of the objections to the sufficiency of the notice is that appellee was not the owner of a portion of the property, and it is claimed the notice could only be given by or on behalf of the real owner. What we have said elsewhere disposes of this objection. Other objections of a highly technical character are urged, but we think the notice was sufficient under the statute.

It is also insisted by appellant that the court erred in permitting evidence to go to the jury as to the destruction of property in the possession of appellee as bailee or common carrier, which was in transit. All that need be said on this subject is, that the evidence tends to show that the cars destroyed were not in transit. The destruction occurred in the yards of appellee known as Brighton Park yards and Fifty-ninth street yards, and these yards were used for the storage of empty cars and dead freight. The same ques-

tion was raised by the city of Chicago in the *Pennsylvania Company case, supra,* and upon that question the Circuit Court of Appeals said: "Then it is objected that some of the cars were in transit and for which no recovery could be had under the statute. But the evidence shows that the cars were not in transit but were stored in plaintiff's yards until wanted for actual use." Whether the cars destroyed were in transit was a question of fact for the jury, and the evidence tending to sustain appellee's contention that they were not in transit, we cannot reverse the judgment on the ground that it is contrary to the weight of the evidence.

The testimony of about fifty freight conductors, and reports made by them showing the arrival of cars in the city of Chicago during a period of a few weeks preceding the destruction of the cars sued for, were admitted. This was followed by the introduction of books called the "Borner record." These books purported to show what cars came into Chicago, into what yards they were placed and any further movement made of the cars. In order that appellee might keep a record of the movement of cars on its line, conductors were required to, and testified they did, make reports on arrival of their trains in Chicago, upon blank forms furnished them for that purpose, known as "P. L. 508." These reports were forwarded to appellee's offices at Pittsburg, where they were entered in records kept for that purpose by a force of clerks. The original reports, "P. L. 508," were identified by the conductors who made them and admitted in evidence. Another report was made by conductors on their arrival in Chicago. This report was on a form called "P. L. 66," and was transmitted to appellee's offices in the city of Chicago. It was a duplicate of the report on form "P. L. 508," with the addition that it contained memoranda showing where the cars were placed or stored after arriving in the city. The information contained in these reports was transcribed into the Borner record by a clerk whose duty it was to make up and keep

the said record, and thereafter yard reports made to the same office showed any further movement of the cars and whether they had been taken out of the yards, and the information contained in these yard reports was also entered in the Borner record. The Borner record derived its name from the fact that a man by the name of Borner invented that form and system of keeping the record of cars. The clerk who kept the record testified the system had been in use for thirty years. After the reports from which the Borner record is made are transcribed in the record said reports are sent to appellee's offices at Pittsburg and after a lapse of time are destroyed. The original reports from which the Borner record was made could not be produced at the trial, and the record was objected to as not being a book of original entries and as being secondary evidence; also because it was merely the conclusions of the clerk who kept the record, drawn from the reports from which it was made. With the exception of the record of two cars, the witness testified that the records admitted and read in evidence were in his handwriting; that the entries were correctly made in the record by him from the reports. The conductors testified that they made out their reports on form "P. L. 508" upon arrival of their trains in the city of Chicago and that said reports were correct; that they made out a duplicate of said report on form "P. L. 66," with the additions above noted. If "P. L. 508" was correct, as testified to, and "P. L. 66" was a duplicate of it, then "P. L. 66" must have been correct also.

In determining what is the best evidence the nature of the case will admit of, and what is secondary evidence, regard must be had, to some extent, of the nature and character of the business to which the evidence relates and the method of its conduct. In a case like the one under consideration it would seem impracticable that the record of the movement of the vast number of cars appellee was required to deal with could have been a book of original en-

242—13

tries. It is easily seen that the correctness of such a record is of the utmost importance to the common carrier for which it is kept. It was made in due course of business and according to methods whose accuracy had been tested for many years, and there can be no doubt from the pre-·liminary proof that it was as reliable as if it had been a book of original entries or the reports from which it was made had been produced. In *Louisville and Nashville Railroad Co.* v. *Daniel,* (Ky.) 91 S. W. Rep. 691, what is known as a "train sheet" was held competent evidence for the purpose of showing the arrival and departure of every train on the company's road at telegraphic stations thereon on a certain day. The train sheet was made by the train dispatcher, whose office was at the end of a division of the road, from information received by telegraph from the different stations on the line as to the movement of trains. It was held that the record so made in the due course of business was as reliable as information given by salesmen, draymen, porters or wharfingers to a book-keeper who makes original entries thereof in books. In *Meyer* v. *Brown,* (Mich.) 90 N. W. Rep. 285, the books of a railroad company were offered in evidence to show the weight of wood shipped, which was a material question involved in the case. The weights were first entered on cards and from these cards they were transferred to the books, and after comparing the cards with the entries in the books, to ascertain the correctness of the books, the cards were destroyed. The books were held competent. *Chisholm* v. *Beaman Machine Co.* 160 Ill. 101, and *Chicago and Northwestern Railway Co.* v. *Ingersoll,* 65 id. 399, tend to support the competency of the books in this case.

We are inclined to the view the court did not err in admitting the Borner record in evidence. Its value and weight as testimony were questions for determination by the jury. Other evidence, which was clearly competent, showed that about seven hundred cars were destroyed in

appellee's Fifty-ninth street and Brighton Park yards, so the appellant could not, in any event, have been seriously prejudiced by the admission of the record.

The same objections made to the Borner record were also made to the introduction in evidence, on behalf of appellee, of a record or book known as the "Historical record." This was the book in which the railroad company kept a record of its car equipment. It showed the time when, the place where and by whom the cars belonging to the company were built, the character of their construction, and to what extent the cars had been repaired or rebuilt. It was testified to by the clerk who kept this record that it was a record of everything in regard to the history of the equipment, both freight and passenger. The witness testified that when a car is built, inspected and turned out, the inspector sends a statement to the clerk or book-keeper showing the initials and numbers of the cars. The car-works also sends a similar statement. These statements are compared, and if they agree they are entered in the record of equipment, which is the historical record. The memoranda or statements are kept for several years and then destroyed. The technical name of the record is known in the business of the company as the "Record of car equipment." The witness testified that he had been engaged in the employment of keeping this record since 1900 and it was in his handwriting since that time; that the record had been kept since 1876, and the entries in it were continuous, regular and uninterrupted; that W. W. Bowman had kept the record before him; that L. S. VanDyke, who was then dead, was Bowman's predecessor, and the witness identified VanDyke's handwriting, and that Richard Bratton kept the book before VanDyke. Bowman was called as a witness and testified to the correctness of the book while he kept it. Historical records of other railroad companies, similar to that of appellee above described, were also identified and admitted in evidence, over the objection of appellant,

for the purpose of showing the history and condition of the cars of these companies which were in the possession of appellee at the time of their destruction by the fire in appellee's yards.   In the nature of things it would be well nigh impossible to preserve and produce the original reports from which these records are made up, and it would be impracticable, if they were preserved, to use them as evidence on a trial, as it is apparent that their number must be legion, for a record is made not only of the construction, but of the condition and all repairs made on each car. Moreover, the original evidence of construction and repairs to cars is not within the personal knowledge of any one person.   The work done on one car may be done by a number of men and under different foremen, so that an entry by the person having personal knowledge would seem impracticable.   These books were offered as aids in arriving at the value of the cars at the time of their destruction. They purported to show the age of the car, its character and the nature and amount of repairs made thereto.   They were supplemented by the testimony of competent witnesses as to the depreciation in value of cars from age and use. None of this evidence was conclusive, but it was competent to be considered by the jury, together with the other evidence.

We may again here remark that the proof shows about seven hundred cars were destroyed by fire set to them by mobs.   It was an impossibility to show with exactness just what usage each car had had since its construction or its precise condition and state of preservation, but the proof does show that they were capable of being moved on their trucks, and the minimum value placed upon them by appellee's witnesses would have produced a considerably larger sum than the verdict of the jury, to say nothing of other property destroyed, not including freight in cars, such as track, ties, tower buildings, machinery, oil houses, watch houses, tool house and tools.

Some other questions have been raised by appellant as to the competency of testimony admitted. It would extend this opinion unnecessarily to discuss them in detail. We have examined the questions raised and are satisfied no reversible error was committed, respecting them.

We have examined the criticisms made by appellant of the rulings of the court in giving and refusing instructions, and are satisfied that no error was committed in that regard of such prejudicial character to appellant as would justify a reversal of this judgment.

The judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*