WEST CENTRAL PRODUCERS CO-OPERATIVE ASSOCIATION *v.*
COMMISSIONER OF AGRICULTURE AND RITCHIE COUNTY
LIVESTOCK SALES CO.

(No. 9313)

Submitted January 15, 1942. Decided February 24, 1942.

KENNA and LOVINS, JUDGES, dissenting.

*Harry E. Moats* and *Max DeBerry,* for appellant.
*Clarence W. Meadows,* Attorney General, *Ira J. Partlow,* Assistant Attorney General, *Haymond Maxwell,* and *S. A. Powell,* for appellees.

FOX, PRESIDENT:

The West Central Producers Co-Operative Association, hereinafter called "West Central," prosecutes this appeal from an order of the Commissioner of Agriculture, hereinafter called "Commissioner," entered on the 14th day of August, 1941, refusing to grant to it a permit to operate a public market at Lamberton, in Ritchie County. The action taken by the Commissioner was based upon an application for such permit filed by West Central, a protest on the part of the Ritchie County Livestock Sales Company, operating a public market at the same point, and hereinafter called "protestant," and a hearing held upon the issue raised thereby.

West Central was organized under the provisions of article 4, chapter 19 of the Code, and its powers, as defined by said section, include the right to "engage in any activities in connection with the marketing, selling * * * of any agricultural products produced or delivered to it

by the members or purchased or received by consignment from other persons. * * *." It contends that under this grant of power, it has the right to conduct a public market independently of the Public Marketing Act, Chapter 2, Acts of the Legislature of 1939, and explains its action in applying for a permit under said last mentioned act by its desire to avoid the risks and penalties involved in the violation thereof by operating such a market without such permit.

On the other hand, the protestant contends that a public market can only be operated under the provisions of the 1939 act, section 4 of which reads as follows:

> "It shall be unlawful for any public market to be operated in this state without first having obtained from the Commissioner of Agriculture of West Virginia a permit therefor. Upon the filing of an application for such permit, the Commissioner shall fix a time and place for hearing thereon, and, after hearing, if it appear that the public interest require the same, and that there is sufficient need for the market in the locality in which it is proposed to be established, shall grant such permit, or deny the same if the contrary appear."

It is also contended by the protestant that Code, 19-4-4, applying to cooperative associations, does not cover the operation of a public market, and that under the section quoted above, the Commissioner was vested with full power to pass upon the granting or refusal of a permit, so long as such power was not exercised in an improper, arbitrary or capricious manner. To these contentions, the applicant replies that the grant of the power to the Commissioner, even if intended by the Legislature, was an unconstitutional exercise of its authority in that it made an unlawful delegation of legislative powers to the executive department of the state government. The fact that the Commissioner is a constitutional executive officer is urged as differentiating him from the appointive officials of the State, to whom administrative powers are frequently granted by the Legislature, as in instances

affecting the Tax Commissioner, the Public Service Commission and other administrative boards and officials.

Any question of fact as to the public interest involved, or the need for the additional public market at Lamberton, is foreclosed here by the finding of the Commissioner. This Court, in analogous cases, has many times held that findings of fact by an administrative board or official will not be disturbed on appeal to this Court. We do not interfere with orders of such boards or officials, following a hearing, except where, they have gone beyond their statutory powers, exercised unconstitutional powers, or based their action on a mistake of law. *United Fuel Gas Co.* v. *Public Service Commission,* 73 W. Va. 571, 80 S. E. 931; *Pittsburgh & West Virginia Gas Co.* v. *Public Service Commission,* 101 W. Va. 63, 132 S. E. 497; *City of Huntington* v. *Public Service Commission,* 101 W. Va. 378, 133 S. E. 144; *Anchor Coal Co.* v. *Public Service Commission,* 123 W. Va. 439, 15 S. E. 2d 406. Therefore, if the Commissioner had constitutional right to exercise the powers attempted to be vested in him by the act of 1939, and such powers were exclusive as to the right of citizens, associations and corporations who operate public markets, then his holding must be upheld. On the contrary, if West Central had the right to operate a public market under Code, 19-4-4, and that right was not affected or destroyed by Chapter 2, Acts 1939, then the action of the Commissioner, so far as it affected the right of West Central to operate a public market, must be reversed.

We do not think the cooperative association statute, Code, 19-4, was intended to cover or authorize the operation of public markets. True, the language of section 4 of article 4 of said statute is broad in that it covers "any activities in connection with the marketing * * * of any agricultural products," but Code, 19-2, in effect prior to the enactment of Chapter 2, Acts 1939, covers markets, and in section 3 thereof provides for auction markets, and the Commissioner is given power to regulate them, and authorized to license auctioneers to conduct sales at such markets. It is quite evident that this statute was intended to provide for the public sale of agricultural pro-

ducts, and on this premise, it may be argued that the Legislature did not intend that public auction markets should be authorized under another article of the same chapter. In the session of 1939, chapter 2, the Legislature enacted a comprehensive statute on the subject of public markets, which we understand was intended to supersede article 2, chapter 19 of the Code. Section 3 of Chapter 2 of the Act provides: "No public market shall hereafter be operated in this state by any person, partnership, firm, association, or corporation except in accordance with the provisions of this act." Section 5 of the act impliedly recognizes the existence of public markets. It provides: "All public markets in bona fide operation during the year one thousand nine hundred and thirty-eight, shall, on application and proof of such operation, be granted such permit by the Commissioner." Therefore, existing public markets, however established, could, under these sections, continue to operate only by obtaining a permit as provided therein. The act of 1939 expressly repeals all acts and parts of acts inconsistent therewith, and so it is that whatever rights may have existed to operate a public market either under article 2 and 4 of chapter 19 of the Code, or otherwise, were merged in Chapter 2, Acts 1939, and were protected by that act. As we see the matter, West Central must stand or fall under the act of 1939, if the same be constitutional, because its claim to establish a public market was asserted after the passage of that act, and in view of the actual findings of the Commissioner against it, it is not in any event entitled to a permit, and is not entitled to operate under Code, 19-4. This brings us to the decisive question in the case, which is the constitutionality of Chapter 2, Acts 1939, and particularly section 4 thereof.

West Central raises the question of the constitutionality of the act for the first time in this Court, and protestant contends that it cannot do so on two grounds: (1) that as a general rule, questions of the unconstitutionality of an act cannot be raised for the first time in an appellate court; and (2) that, having applied for a permit under the act, it is estopped to deny its legality under the constitu-

tion. We do not think either position is tenable. The question of the constitutionality of the act is a judicial one, and, under the applicable statutory procedure, the first opportunity West Central had to raise the question was in this Court. Certainly the Commissioner did not possess power to pass upon that question. If this were a case coming here on appeal or writ of error from a court possessing judicial power, the authorities cited by protestant would be persuasive; as it is, we do not think they apply. As to the asserted estoppel, we do not think West Central was called upon to assume the risks of the fines and penalties provided in the act against operating a public market without a permit thereunder. These penalties, as provided by section 19 of the act of 1939 are severe, being not less than fifty dollars for the first offense and not less than four hundred dollars for the second offense. It could avoid them by temporarily waiving its claimed right to operate under its charter, and at a cost of ten dollars apply for a permit under the 1939 act. We think it had a right to do so without waiving any rights it might claim to possess under other statutory law. There is, of course, much authority for the proposition that a party who has taken benefits under an act is estopped from contesting its validity, but there are exceptions to this general rule. "The most important and frequent class of exceptions to the general doctrine of waiver or estoppel to assert the invalidity of a law is that where a statute requires a duty which is mandatory in form, accompanied by penalties for failure to obey its provisions, or is otherwise coercive. In such cases the element of voluntary action essential to waiver or estoppel is absent." 11 Am. Jur. 771, sec. 124. There can be no estoppel where the conduct relied upon as establishing the same is brought about through coercion, and we think the severe terms of the statute operated to compel West Central to seek a permit thereunder, and that, in the circumstances, it was not estopped to deny, thereafter, the right of the Commissioner to prevent it from operating its market, that being the legal effect of his order. In *Buck* v. *Kuyken-*

*dall,* 267 U. S. 307, 45 S. Ct. 324, 326, 69 L. Ed. 623, 38 A. L. R. 286, Justice Brandeis discussed this matter in the following language:

> "The argument is this: Buck's claim is not that the department's action is unconstitutional because arbitrary or unreasonable. It is that section 4 is unconstitutional because use of the highways for interstate commerce is denied unless the prescribed certificate shall have been secured. Buck applied for a certificate. Thus he invoked the exercise of the power which he now assails. One who invokes the provisions of a law may not thereafter question its constitutionality. The argument is unsound. It is true that one cannot, in the same proceeding, both assail a statute and rely upon it. * * * Nor can one who avails himself of the benefits conferred by a statute deny its validity. * * * But in the case at bar, Buck does not rely upon any provision of the statute assailed; and he has received no benefit under it. He was willing, if permitted to use the highways, to comply with all the laws relating to common carriers. But the permission sought was denied. The case presents no element of estoppel."

This principle disposes of the further question raised as to the assumption of inconsistent positions.

West Central contends that Chapter 2, Acts of the Legislature of 1939, is unconstitutional in that there is an unlawful delegation of legislative powers to an executive officer of the state government. The principal ground on which this position is based is that the delegation of powers is not accompanied by a statement of policy and fixed standards by which the delegated powers may be exercised. In *Chapman* v. *Housing Authority,* 121 W. Va. 319, 3 S. E. 2d 502, we held:

> "Of course, delegation of discretionary power to an administrative body must be accompanied by adequate standards, either prescribed by statute itself or inherent in the subject-matter of the legislation, sufficient to guide its exercise. Otherwise, it will be violative of Art. V of the West Virginia Constitution."

But in that case, we upheld the act and went so far as to base our action upon standards fixed by an Act of Congress, on which the act of the Legislature under attack was based. The act under attack in this case states a legislative policy. By section 2 it provides:

> "All public markets, as defined in section one, are hereby declared to be affected with a public interest and subject to regulation by the state for the general welfare as in this act provided."

And a public market is defined as:

> "* * * any place of business where livestock, poultry, and other agricultural or horticultural products are received and sold at public auction."

The act goes into detail as to the licensing of weighmen and auctioneers, fees, grading, classification and standards, inspection, keeping records, and charges the Commissioner with enforcement of the act with full authority and power to make rules and regulations necessary to carry out its provisions. No question seems to be raised affecting the validity of the act, except as to section 4 thereof, and as to that section, it is contended that no standard is set up which controls the Commissioner in determining what the public interest may require or the need for a market in any locality.

This raises the question as to whether, in determining the matter of reasonable standards, we shall consider the act as a whole or single out a particular section. We think it fair to say that aside from section 4, the standards set up are sufficient to support the delegation of the legislative power, and the question we must decide is whether, as to section 4, even if the provision for a hearing does not provide an adequate standard, the power delegated is of such nature as to lend itself to any fixed or additional standard of state-wide application for its exercise. If it does not, then we would not be justified, as a practical matter, in striking down the entire act, merely because no rule or standard could be set up governing a matter of what is or is not the public interest. The subject matter

of the legislation being one which can be covered by general law, the Legislature would be without power to pass a special act granting a permit to operate a public market. Constitution, Article VI, Section 39. Therefore, if the attempted delegation of power is unconstitutional we have reached an impasse. We do not think that we are called upon to reason ourselves into this state of utter helplessness. Rather, we prefer to solve the problem from a practical standpoint and resolve doubts in favor of legislative interpretation of its power. We are bound by the elementary rule "that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *Hooper* v. *California,* 155 U. S. 648, 15 S. Ct. 207, 211, 39 L. Ed. 297. Supporting this rule, see *Railway Co.* v. *Conley,* 67 W. Va. 129-166, 67 S. E. 613; *State* v. *Massie,* 95 W. Va. 233, 120 S. E. 514. "If there be any doubt as to the constitutionality of an act, that doubt should always be resolved in favor of the validity of the act." *State* v. *Furr,* 101 W. Va. 178, 132 S. E. 504.

It must be admitted that the Commissioner is given wide discretionary powers in reaching a finding on questions of public interest and need for a market, but this discretion can only be exercised after fixing a time and place for a hearing, and after such hearing is held, and an appeal may be taken from any action taken by the Commissioner. Of course, this discretion cannot be abused. It is axiomatic that no public official, however broad his powers, can exercise the same in a fraudulent, arbitrary or capricious manner. The doors of the courts are always open to redress grievances suffered by citizens through the fraudulent, arbitrary or capricious exercise of governmental power. But the rule which requires the setting up of standards must be interpreted in a reasonable way. In some matters, standards may be set up. As to the act in question, reasonable standards were set up for its administration, unless it be as to the granting of permits under section 4, wherein the action of the Commissioner is made to depend on public interest or need, and he is authorized after hearing to pass on these ques-

tions. From the very nature of the discretionary powers delegated, with respect to a finding on these points, the fixing of a standard for their exercise is well nigh impossible. What standard could the Legislature set up to control the discretion of the Commissioner of Agriculture in determining whether the public interest required the establishment of a market at a certain point, or, to put it another way, the need of a market at that point? These questions could only be determined according to the facts of a particular situation, and would hardly be the same as to any two localities in the state. Any standard as to distances between markets or surrounding population would be more or less arbitrary, and of little, if any, value. We are unable to see how any standard governing what is termed a public interest, or need for a market, could be set up to control the discretion of the Commissioner in relation thereto. The question of public interest, need of additional service on the part of public utilities, or businesses affected with a public interest, the granting of permits and certificates of convenience which depend upon a finding with reference thereto by an administrative board or official, are, in our opinion, not susceptible of being controlled by any fixed standard which the Legislature might set up, and we think this fact has been recognized in legislative history, as the same affects governmental activities which are exercised by executives and administrative boards and officials, under legislative delegation of power. For example, the Commissioner of Banking, without any standards to guide his actions, is authorized by Code, 31-4-3, to determine whether or not a charter shall issue to any banking institution in this state, and in *State* v. *Hill*, 84 W. Va. 468, 100 S. E. 286, the lodging of such discretion in the Banking Commissioner was upheld, although the question of unconstitutionality on the point here presented was not raised. In *Swearengen* v. *Bond, Auditor*, 96 W. Va. 193, 122 S. E. 539, this Court upheld the legislative act which empowered the State Auditor to refuse a certificate of authority or license to act as an insurance agent to one "whom he finds not trustworthy and competent to transact the business for au-

thority to do which application is made." No standards are set up for the exercise of power by the Public Service Commission in the following particulars: the power to regulate utilities as authorized by Code, 24-2-1, and 2; the granting of certificates of public convenience and necessity for the construction, equipment or operation of any public utility enterprise in this State, authorized by Code, 24-2-11; and the provisions for obtaining consent of the Public Service Commission for the performance of certain acts is provided in Code, 24-2-12. By Chapter 50, Acts of the Legislature of 1937, the Public Service Commission of West Virginia was granted authority to regulate transportation of passengers and property for hire over the public highways of this State, and in this act, as amended by Chapter 86, Acts of 1939, section 5 thereof, the Public Service Commission is granted the authority to issue certificates of convenience and necessity "if the commission finds from the evidence that the public convenience and necessity require the proposed service or any part thereof," and it is therein provided that it may impose "such terms and conditions as in its judgment the public convenience and necessity may require." It is also authorized to determine whether or not a person holding a certificate of convenience is furnishing adequate and sufficient service to meet public needs; and also that before granting the certificate it shall take into consideration existing transportation facilities to determine whether or not the same are reasonably sufficient and adequate, on the question whether an additional certificate covering the same route or territory shall be issued. Similar powers, with respect to the use of state highways, were at one time vested in the State Road Commission, with no standards set up for their exercise. The authority of the Public Service Commission to exercise the discretionary powers in these particulars has not been questioned, and therefore, we have no decision of this Court on that exact point. It is clear, however, that the Legislature has heretofore assumed that it had the right to delegate its powers, with respect to such matters, to administrative boards and officials, without attempting to set up specific standards

by which they may be determined. We think the legislative policy, in this respect, may be upheld from the inherent nature of the discretionary powers so delegated. If the Public Service Commission was properly delegated the power to grant or refuse to grant permits and certificates of convenience, depending upon the public interest or need, adequacy of existing service, and matters of like nature, we see no reason why the Legislature could not vest in the Commissioner of Agriculture the power to determine whether the establishment of a public market, in a particular locality, was not in the public interest or whether there was need therefor. The granting of such a power is based upon the general principle that when the state takes over the regulation of a public utility or any business affected with a public interest, and undertakes to regulate same, it will endeavor to avoid destructive competition, not in the public interest.

Believing that the statute under consideration is constitutional; that the Commissioner of Agriculture had power to act thereunder; and being confronted with the finding of fact by the Commissioner, which, in the circumstances, we cannot disturb, the order appealed from is affirmed.

*Affirmed.*

Rose, Judge, concurring in result:

In my judgment there should be an affirmance of this case solely on the ground that on the merits of the case as made before the Commissioner of Agriculture, the appellant has failed to show any error in the Commissioner's decision that it was not entitled to a permit to operate a public market at the place intended. In my judgment, it is not legally possible for the appellant to raise, or for this Court to consider, the question of the constitutionality of the act under which the appellant's petition was filed and the permit sought. This conclusion, it seems to me, inevitably results from the rule of law, universal so far as I can ascertain, that one who, by a proceeding before a public official, board, or commission, or in court, seeks

benefits or privileges provided by a statute cannot, at least, in the same proceeding, question the constitutionality of that statute.

The case of *Buck v. Kuykendall,* 267 U. S. 307, 45 S. Ct. 324, 326, 69 L. Ed. 623, 38 A. L. R. 286, cited and quoted from in the majority opinion does not disagree with this proposition. On the contrary, it expressly affirms it. In that case, Buck petitioned for, and was refused, a certificate for the operation of vehicles for hire in the State of Washington. He then instituted a suit in the proper District Court of the United States to enjoin the state officials from interfering with his operation as a carrier. The Supreme Court of the United States, as shown by the excerpt from the opinion, quoted in the majority opinion, held that: "It is true that one cannot, *in the same proceeding,* both assail a statute and rely upon it." (Italics supplied.) The plaintiff was, indeed, permitted to assert the unconstitutionality of the statute under which he had asked for a permit, but he did it, not in the same proceeding, but in a separate chancery suit.

The Supreme Court of the United States has spoken often on various phases of this question, sometimes in terms less limited than the pronouncement in *Buck v. Kuykendall, supra.* In the later case of *United Fuel Gas Co. v. Railroad Commission of Kentucky,* 278 U. S. 300, 49 S. Ct. 150, 152, 73 L. Ed. 390, the plaintiff, after having sought from the Railroad Commission of Kentucky certain relief and been denied, brought suit in the United States District Court to enjoin the commission from interfering with its operation on the ground that the statute creating the commission was unconstitutional. The Court, speaking through Justice Stone, said:

> "It is the rule of this Court, consistently applied, that one who has invoked action by state courts or authorities under state statutes may not later, when dissatisfied with the result, assail their action on the theory that the statutes under which the action was taken offend against the Constitution of the United States. * * * The sound discretion which controls the exercise of the ex-

traordinary powers of a federal court of equity should not permit them to be exerted to relieve suitors on such a ground from the very action of state authorities which they have invoked."

It will thus be seen that the Supreme Court of the United States has not adhered to so much of the holding in *Buck* v. *Kuykendall* as would say that in order to be estopped a plaintiff or petitioner must have made claim to benefits under the statute in the very proceeding in which he attacks the statute. In the case now at bar, however, we need not go beyond the principle conceded in *Buck* v. *Kuykendall,* since the appellant originally sought a certificate in this proceeding under the identical statute which he now says is unconstitutional.

This State has, apparently, recognized the soundness and propriety of this rule. In the case of *State* v. *Jackson,* 95 W. Va. 365, 121 S. E. 162, 163, a mortgage and discount company had applied to the Commissioner of Banking for a certificate of authority to begin business and had been refused. It thereupon applied to this Court for a writ of mandamus to compel the issuance of the certificate, and argued that the act requiring such certificate was unconstitutional. This Court, in the opinion of Judge Lively, said:

"The pleadings do not raise this constitutional question. The petition does not and *could not* do so for it asks mandamus to compel the issuance of a certificate of authority under that act. To aver that the act is unconstitutional would be to admit that the petition should be refused, and the writ dismissed. *One who asks for a license under an act* or receives benefits thereunder is estopped from denying its validity." (Italics supplied.)

The Supreme Court of Virginia is in agreement with this principle. In *Purcell* v. *Conrad,* 84 Va. 557, 5 S. E. 545, 549, one who had been denied what he considered adequate relief from a statutory administrative board sought

to enjoin the board from interference with the rights he claimed on the ground that the act creating the board was unconstitutional. The court said:

> "It is, however, contended, in the second place, that the act of March 4, 1884, is unwarranted by the constitution, * * *." But, manifestly, all this is beside the present case, and cannot be considered on this appeal for two reasons: First, because no such question is raised in the pleadings; and, secondly, because the appellee, having availed himself of the benefit of the statute, and *in his bill claiming under* it, is estopped in this litigation from contesting its validity, whether it be constitutional or not." (Italics in original report.)

In an earlier case, *Roanoke City* v. *Berkowitz*, 80 Va. 616, the city undertook to condemn certain lands and objected to its being required to take the fee instead of an easement therein, on the ground that such requirement of the statute was unconstitutional. The court said:

> "But it is unnecessary to dwell upon this point. Clearly, the city cannot be heard to deny the validity of the statute under which it has chosen to proceed."

From a few of the legion of state cases, I will quote. In the case of *Fulton Waterworks Co.* v. *Bear Lithia Springs Co.*, 47 App. D. C. 437, the constitutionality of a law was attacked, but the court said: "It (appellant) prosecutes this appeal by virtue of the statute which it assails. Its presence here as an appellant is in effect an assertion on its part that the statute is valid. It cannot claim under the statute and at the same time denounce it as an unwarranted exercise of power by Congress." In *Luken* v. *Railway Co.*, 248 Ill. 377, 94 N. E. 175, 178, 140 Am. St. Rep. 220, 21 Ann. Cas. 82, the opinion says: "Under repeated decisions of this court defendant waived the right to question the validity of the statute by prosecuting its appeal to the Appellate Court." In *State* v. *Mayor*, 207 Wis. 199, 240 N. W. 847, 850, 79 A. L. R. 281, it is said that:

"However, relator in seeking on certiorari to have the revocation of its license set aside, and thus to re-establish its license and the resulting privilege, under the ordinance, as a valid enactment, cannot, while thus insisting on the exercise of a privilege by virtue of the ordinance, also assert that the ordinance under which he claims such privilege is invalid." The Supreme Court of Illinois, in *Pittsburgh, etc., Railway Co.* v. *City of Chicago,* 242 Ill. 178, 89 N. E. 1022, 1024, 44 L. R. A. (N. S.) 358, 134 Am. St. Rep. 316, says: "As to the constitutionality of the law under which the action is brought, appellant waived that question by prosecuting its appeal to the Appellate Court." In *Barnes* v. *City of Springfield,* 268 Mass. 497, 168 N. E. 78, 83, the Massachusetts court said: "The petitioners are seeking to have a jury assess their damages in accordance with the provisions of the act authorizing the taking. By the allegations in the petition they have admitted for the purposes of these proceedings the taking, its validity, the regularity of the proceedings, and the constitutionality of the act." In *Brady* v. *Place,* 41 Idaho 747, 242 P. 314, 316, 243 P. 654, it was announced that: "The weight of authority holds that a party seeking to enforce a statute, or to avail himself of its provisions, may not question its constitutionality." The Supreme Court of Connecticut, in *Piccolo* v. *Town of West Haven,* 120 Conn. 449, 181 A. 615, 618, says: "The appellants, having sought relief under the zoning regulations, cannot be heard to question their constitutionality." In *Sommerville* v. *Board of Commissioners,* 116 Neb. 282, 216 N. W. 815, it was held: "A party invoking the provisions of a statute is not in a position to raise the question of its constitutionality." In *Oren* v. *Swift & Company,* 330 Mo. 869, 51 S. W. 2d 59, 60, an employee applied for benefits under a workmen's compensation law. From an adverse award he appealed to the circuit court where he moved to quash the award on the ground that the very sections of the act under which he proceeded were unconstitutional. The court said: "Claimant is not in position to question the validity of the act under which he claims and seeks to enforce a right thereby created, upon the provisions of which he

relies and pursuant to the terms of which he filed and prosecuted his claim."

The majority of the Court in the present case apparently concede the correctness and binding character of this general rule, but rely upon an exception thereto, under which it is held that the appellant may be heard, and quote from 11 Am. Jur., Constitutional Law, sec. 124, p. 771, where it is stated that:

> "The most important and frequent class of exceptions to the general doctrine of waiver or estoppel to assert the invalidity of a law is that *where a statute requires a duty which is mandatory in form,* accompanied by penalties for failure to obey its provisions, or is otherwise coercive." (Italics supplied.)

The statute here under review contains no element of a mandatory character. The appellant was not compelled to take out a license. It was not required, in any sense, to conduct a stock market. It never had conducted such a market. The statute merely provided that this appellant, and all others who might elect to conduct a market, must first obtain the certificate by the statute required. This is not in any sense a mandatory statute. Nor is the statute "otherwise coercive." It is true that the appellant is forbidden under a monetary penalty of fifty dollars to conduct a public market without the license required by the statute, but in no case cited in American Jurisprudence to illustrate the exception mentioned, is such a prohibition contested as coercive in the sense in which the word is there used. In fact, in none of the cases so cited has "coercion" been held to condone a plaintiff or petitioner who is asking a privilege under a statute and challenging its validity in the same proceeding. Nor can it be said that the appellant here had no other adequate remedy for testing the constitutionality of the act in question. The reported cases, readily available to the bar, will disclose a variety of ways in which the constitutionality of a statute may be determined without the anomaly and inconsistency of both claiming under and challenging it in one proceeding.

However, since, by the judgment of the other members

of the Court, the constitutional question is let into the case, I record my opinion as being in favor of the validity of the statute in question.

KENNA, JUDGE, dissenting:

Under Code, 19-2A-4, it is made a criminal offense to operate a public market without the permission of the Commissioner of Agriculture. The Commissioner is vested with power to permit the operation of a public market upon the filing of an application therefor and a hearing upon such application if, after hearing, it appears to him "that the public interest requires same, and that there is sufficient need for the market in the locality in which it is proposed to be established, * * *." The statute establishes absolutely no uniform rule nor standard governing the issuance of the permit, although, as pointed out in the majority opinion, the statute does largely govern the operation of public markets after the permission to operate has been obtained. The Commissioner's discretion is limited only to what in his opinion the public interest may require and the need for a market in the locality in which the proposed market is to be established. The statute undertakes no definition of its terms "public interest", "Sufficient need", and "locality". The definition and application of these controlling terms are left to the changeable incumbent of an office, who, under the wording of the statute, has power to create monopolies or to permit cut-throat competition.

It is undisputed that it rests solely within the power of the Legislature under the exercise of the police power to control the installation and operation of public markets, so that we are here confronted by the question of whether the section under consideration confers upon the Commissioner of Agriculture the administrative power to render effective a valid act of the Legislature or whether that act is an unconstitutional attempted delegation of legislative power to an executive officer of the state.

That it is the duty of the executive department of the government to enforce the law and thus to apply the legislative powers is beyond question. That function

necessarily involves, to a degree, the administrative interpretation of the law to be enforced. It does not, however, carry with it the creation of any substantive part of that law, and a statute, the purpose of which is to vest in an executive officer the power to regulate conduct by prohibiting what he may deem to be improper and permitting only that which in his judgment is permissible, in the application of the law as distinguished from its administration, is unconstitutional due to the fact that it is an unwarranted delegation of legislative authority.

Of course, the Legislature can, by the adoption of certain set rules and standards uniformly applicable, confer upon an administrative branch of the executive department the power to apply a statute where, in its judgment, the circumstances conform to the statute's requirements. *J. W. Hampton, Jr., & Co.* v. *United States* (1928), 276 U. S. 394, 72 L. Ed. 624, 48 S. Ct. 348; *Chapman* v. *Housing Authority*, 121 W. Va. 319, 336, 3 S. E. 2d 502; *Sutherland* v. *Miller, Judge*, 79 W. Va. 796, 91 S. E. 993, L. R. A., 1917D, 1040. See also, the annotations in 12 A. L. R. 1435; 54 A. L. R. 1104; 92 A. L. R. 400.

In my opinion, the act in question attempts to vest in the Commissioner of Agriculture the unlimited discretionary power to fix the circumstances under which the same course of conduct shall, or shall not, constitute a criminal offense. There being no general rule nor standard set up in the act applicable in common to all of the citizens of the state, and limiting and directing the exercise of the power attempted to be conferred, in my opinion, that part of the act governing the opening of public markets under a permit granted by the Commissioner of Agriculture is plainly unconstitutional. I believe further that the section referred to is so inextricably interwoven with the other parts of the act that its invalidity nullifies the whole. It clearly was not the intention of the Legislature to forbid all public markets.

Since the act under consideration did not become effective until the year 1939, I do not contemplate a state of utter helplessness that will result from its invalidity.

I am authorized to say that Judge Lovins concurs in this dissent.